ORLEANS,
August,
1839.

Boutwell
v.
Mason &
Scott.

---

THOMAS JAMESON v. WILLIAM H. ISAACS.

An escape of a debtor from the liberties of a jail, is a breach of the bond, and a return to the limits, before action, does not cure the breach or escape, nor is such debtor, after such return, a prisoner.

*Junior*, is no part of a man's name.

DEBT, upon a jail bond, given by the defendant and one Luther Kidder, on the 16th day of September, 1835, to the plaintiff, as sheriff of Orleans county, conditioned that the said Luther, who was then a prisoner in the common jail in Irasburgh, in said county of Orleans, by virtue of an execu-tion in favor of Edmund Clark, for the sum of $13,20 dam-ages, and $2,20 costs, issued on a judgment recovered be-fore Eli Hinds, a justice of the peace, on the 28th of August, 1834, which execution was dated the 18th of August, 1835,

and signed by said justice, should not depart from the limits of the jail yard, &c.

There were three counts in the declaration. The first is unimportant, as the case was deciced upon the other counts.

In the second count, the judgment is alleged to have been rendered by Eli Hinds, justice of the peace, and the execution to have been signed by him, and the breach of the bond, by Kidder, on the 17th of September, 1835.

In the third count, the plaintiff alleged that the judgment was rendered by Eli Hinds Jr. and that, by mistake, the judgment was described, in the condition of said bond, as having been rendered by Eli Hinds, instead of Eli Hinds Jr.

The defendant pleaded—first, nul tiel record, and secondly a plea, in substance, as follows : That the said Edmund Clark, on the third day of March, 1834, by the consideration of Eli Hinds Jr., a justice of the peace &c., recovered a judgment in his favor against the said Kidder for $59,64 damages and $1,50, costs; that on the same third day of March, 1834, the said Clark took out a writ of execution on said judgment, against the said Kidder, dated the day and year last aforesaid, and delivered the same to W. H. Isaacs, constable of Eden, in the county of Orleans; that said constable afterwards, in the life of said execution, to wit, on the thirtieth day of June, 1834, by virtue of said execution, for want of goods and chattels of said Kidder, committed said Kidder to the common jail in Irasburgh in said county ; that while said Kidder was thus a prisoner in said jail, and after the rendition of said judgment in the second and third counts mentioned, on application to the commissioners of jail delivery, for that purpose, and after due notice to said Clark, to wit, on the twelfth day of September, 1834, the said commissioners adjuded that the said Kidder be admitted to the poor debtor's oath, and then and there, in due form of law, administered said oath to said Kidder, and certified said proceedings and delivered a certificate thereof to said Kidder and a like certificate to the deputy jailer, all which proceedings before said commissioners were two months after the accruing of the debts and rendition of said judgment mentioned in said second and third counts, and two months previous to the commitment of said Kidder on said last mentioned judgment and the execution of said bond.

The plaintiff, in his replication to the said second plea, alleged, that before the admission of said Kidder to the poor debtors oath by said commissions, as set forth in said second plea, to wit, on the first day of September 1834, the said Kidder without having paid the said execution, mentioned in said second plea, and without having been legally discharged from his said imprisonment, escaped from the liberties of said prison and went at large, to wit, at Eden aforesaid; and traversed the allegation that said Kidder was a legal prisoner, at the time of his discharge from his imprisonment by said commissioners of jail delivery, on the twelfth of September, 1834, as mentioned in said second plea.

ORLEANS,
August,
1839.

Jameson
v.
Isaacs.

The defendant demurred to this replication.

Upon the trial in the county court, the plaintiff introduced a record of said judgment mentioned in the second and third counts, rendered by Eli Hinds Jun., a justice of the peace.

The county court decided that there was such a record and judgment as the plaintiff had described in his declaration, and that the plaintiff's replication was sufficient, and rendered a judgment for the plaintiff, to which decision the defendant excepted.

Upon the hearing in this court, it was admitted, by the parties, that after Kidder escaped from his imprisonment, he returned within the limits of said jail yard and applied to the commissioners of jail delivery to be admitted to the poor debtor's oath on the first execution, which was administered to him by the commissioners, and they delivered to him and the jailer, proper certificates, which admission was made a part of the case.

*Maeck & Smalley*, for defendant.

*J. Cooper*, for plaintiff.

The opinion of the court was delivered by

COLLAMER, J.—The usual addition of *junior* to a man's name, to distinguish him from an elder man of the same name and place, constitutes no part of such man's name, any more than *longer, whiter, cooper*, or any other designation. This has been too often decided to be again questioned.

The question, in this case is, can a debtor after being admitted to the liberties of the jail and after departing those liberties, again return within them and be considered as *im-*

ORLEANS,
August,
1839.

Jameson
v.
Isaacs.

*prisoned* and entitled to the poor debtors oath, and its privileges? In England, when the prisons became crowded, by an act of parliament, the court, by rules, from time to time, fixed what should be considered the limits of the prisons. These were considered the prisons themselves; and if the jailer kept the prisoners within those limits, they were considered as in the prison. An escape from those *limits* is there viewed as a mere *negligent* escape, and of course, if there be a return to prison, or *a recapture on fresh suit*, before action for the escape, all was well. This is followed in New York, and such an escape and return is no breach of the condition of the prison bond.

Our system is entirely different. Our jail yards are not extensions of the prison walls, but *liberties*, for the ease of the prisoner. To these liberties, prisoners of a certain class only, are admitted, and they only on giving bond, and to this they are entitled of right and not of favor. That admitting to these liberties without a bond would itself be an escape was early decided in this state. Brayton's R. 37. If any debtors not entitled to such admission were admitted to these liberties, such admission was also early decided to be an escape. Brayton's R. 74. Our jail yards then are not *prison limits*, as in England or New York. An escape from the liberties of our jail yards, or prison liberties, is not a mere negligent escape from prison. It is a breach of the condition of the bond and an action may, at any time afterwards, be maintained on the bond by the sheriff, or the creditor, on assignment thereof. To such action, a plea, that the prisoner returned, would be no defence. After such a departure the sheriff must look to the bond alone, for security. He cannot retake the debtor, and has no control over him, nor can his return confer this power. The debtor is, therefore, on his return, not subject to the liabilities, nor entitled to the privileges of an imprisoned debtor. He cannot be considered as *imprisoned*, within the meaning of the statute, and therefore the taking of the poor debtors oath, by one in that condition, is without effect.

Judgment affirmed.