ALLEN SANDERSON *v.* TOWN OF RUTLAND.

*Jailor. Negligent and Voluntary Escapes of Prisoner. Pauper. Towns.*

The defendant town being liable to the jailor for the support of a prisoner in jail committed on an execution against his body, is not relieved from liability to support him longer by a negligent escape of the prisoner, by walking out of the jail for a few minutes and then voluntarily returning.

The prisoner was sick, and by advice of a physician was admitted by the jailor to the dwelling-house part of the jail, and from there, without the knowledge or consent of the jailor, he walked out of doors a few rods and returned. *Held* that this was in respect to the jailor a *negligent* escape as contradistinguished from a *voluntary* escape; and did not affect the legality of the subsequent imprisonment, nor give the creditor any right of action against the jailor, nor absolve the town from its duty to furnish further support.

49

ASSUMPSIT—demanding three hundred dollars. The case was tried upon an agreed statement as follows :

The plaintiff was, on the 30th April, 1869, and has been ever since, the keeper of the jail located at Rutland ; and it was and is the business of the plaintiff to board and provide for prisoners committed to said jail.

He brought his action against the said town on the 13th day of August, 1870.

On the 30th day of April, 1869, one Arnold Ayres was a transient person, and on that day was committed to said jail upon an execution issued upon a judgment in favor of one Schofield, for the sum of $87 damages, and $5.73 costs of suit, against the body of said Ayres. Ayres is about sixty-nine years of age, and was and has been in feeble health, was poor and in need of relief, board, care and nursing, all of which have been furnished him by said plaintiff from the 30th April, 1869, to the present time. Ayres still remains in jail, without other process against him than said execution. On the first day of May, 1869, the plaintiff gave notice and represented to the overseer of the poor of Rutland the situation and the confinement of Ayres, and requested him to provide for the support of said prisoner ; but the overseer wholly neglected to make any provision for the support of Ayres. On the 23d day of July, 1869, the prisoner was and had been for several days sick, and was in such a feeble condition that the attending physician gave Sanderson, the plaintiff, and the prisoner notice that the prisoner could not live long in said prison without fresh air ; that it was essential that he should come out of his close confinement into the open air out doors for a few days to save his life. Thereupon Sanderson took the prisoner out of his cell into the dwelling-house part of the jail, and there allowed him to walk about the house as he could, and go to the open doors of said jail building ; and continued so to do for three successive days. Thereafter, and within a few days, plaintiff's wife, in the absence of the plaintiff, allowed the prisoner to come out of his cell into the dwelling-house part, under the said advice and direction of the physician, and that upon this occasion, and without the knowledge or consent or leave of the plaintiff or his wife, the prisoner walked out of said jail into the back yard of the jail premises for a few minutes, and thence back into said building, and afterwards, on the same day, and without the knowledge of either the plaintiff or his wife, he walked out of the jail into the street and to a blacksmith's shop a few rods from the jail and back again, and then again left the jail and went to a grocery store some twenty rods from the jail and across the public com-

mon and street, and was out of the jail and at said places for a few minutes only; and then, and on all said occasions of his being out of his cell, said prisoner voluntarily returned to his place of confinement, and has remained therein to the present time.

The plaintiff did not know of the prisoner's leaving the jail, and did not intend to allow him to leave the building in which the jail is situated; that the prisoner was so taken from his cell only four times, and each and all the times under the special directions of the physician, and to save the life of the prisoner, as advised by said physician.

The dwelling-house part of said jail is within the building originally constituting the prison, and in which some of the cells of said prison still are. The prison part in which the prisoner was confined was the *new* part, built a few years since on to the back of the old prison, and connected with the old prison, in which said dwelling-house part is situated—the whole, as one building, constituting the jail.

It was on the 30th day of July, 1869, that said prisoner went to the grocery store, blacksmith's shop, and into said back yard.

During his confinement the prisoner has been sick, and required extra nursing and care for about one third of the time upon an average, and this was worth, upon an average, for said third of the time, an *extra* allowance of three dollars a week; that three dollars and a half a week is the legal rate of allowance for board of prisoners.

If the plaintiff is entitled to recover upon this statement of facts, he is to be allowed three dollars and fifty cents per week for all the time, and three dollars extra for nursing and doctoring the prisoner for one third of the time.

The court, at the September term, 1870, WHEELER, J., presiding, rendered judgment, *pro forma*, by agreement, for the defendant, upon the agreed statement. Exceptions by plaintiff.

*W. H. Smith* and *C. H. Joyce*, for the plaintiff.

The plaintiff is entitled to recover from May 1, 1869, to the 30th July, 1869, and to the bringing of this suit, Aug. 13, 1870, unless the town is absolved from its liability since July 30 by reason of the prisoner going out of the jail on that day. Gen. Sts., 136, § 13.

The prisoner was in jail upon *final* process, not upon the *limits*.

If the case shows an escape by the prisoner, it was, as to the jailer, a *negligent*, not a *voluntary* escape—" without the know-

ledge or consent of the officer." 1 Burrill Law Dic., 555,—Negligent. 1 Bou. Law Dic., 475–7 ; *Lansing* v. *Fleet*, 2 Johns. Cases, 4, note.

In case of *negligent* escape, the officer may recapture upon a fresh pursuit, and recommit, and this is valid excuse for the officer, if before action for escape. 2 Hilliard on Torts, 264, § 7 ; *Griffiths* v. *Eyles*, 1 Bos. & Pul., 413–418.

Here was a voluntary return of prisoner, who is still in confinement, which is equivalent to recapture upon fresh pursuit. *Bonafons* v. *Walker*, 2 Term R., 126 ; *Drake* v. *Chester*, 2 Conn., 473.

But we urge that the question of escape cannot be raised in this case between *these parties*. If the plaintiff has been guilty of negligence for which he is answerable to the creditor, this defendant town is not affected thereby. *Newfane* v. *Dummerston*, 34 Vt., 184 ; *Woodstock* v. *Plymouth*, 2 Vt., Wash. Dig., 473.

*Edgerton & Nicholson*, for the defendant.

The town is not liable for the support of Ayres, for the reason that the plaintiff as jailor suffered an escape of said Ayres from the prison. It was at an early day decided that any departure of a prisoner committed on final process from the jail, by the consent of the sheriff, is an escape, although the prisoner should afterwards voluntarily return. *Wait* v. *Dana*, Bray., 37.

It has also been held that if a prisoner be admitted to the liberties of the prison, in a case not authorized by statute, it is an escape. *Leonard* v. *Hoyt*, Bray., 73 ; *Lowrey* v. *Barney et al.*, 2 D. Ch., 11.

And in such case the debtor does not again become a prisoner on his return to the prison. If he be lawfully admitted to the liberties of the yard, and escape beyond its limits, he cannot be retaken and be voluntarily reinstated as a prisoner within the limits or within the prison walls. *Jameson* v. *Isaacs*, 12 Vt., 611. And the same rule would apply if he escape from the jail itself. See Gen. Sts., 703, §§ 11, 13, 14 ; do., 706, § 35.

The opinion of the court was delivered by

PECK, J. No time need be spent in discussing the question as to what constitutes an escape ; since the defendant's counsel con-

cede that allowing the prisoner to go out into the dwelling-house part of the jail building was not, upon the facts stated, an escape; and the plaintiff's counsel are correct in claiming that if the going out of the building, July 30, 1869, to the blacksmith shop and to the store, a distance of a few rods, without the knowledge or consent of the jailor, and being absent a few minutes, under the circumstances stated, was an escape, it was in respect to the plaintiff, the jailor, an *involuntary*, or, as it is usually termed in law, a *negligent* escape, as contradistinguished from a *voluntary* escape.

This alleged escape is relied on by the defendant's counsel as a defense to that portion of the plaintiff's claim for board and other expenses for the prisoner's support which accrued after that date. The defendant has no interest in the judgment or execution by virtue of which the debtor was committed; consequently can receive no detriment from the temporary escape in question. But it is claimed that the effect of such escape was to render the subsequent imprisonment of the debtor illegal, and hence that he was no longer " *committed to any jail*," or " *confined in any jail*," within the meaning of Gen. St., ch. 20, § 13, or § 36 of the same chapter, on which the action is founded, or which creates the duty and gives the right of action in cases of this kind. As the town had no interest in the judgment on which the debtor was committed, we may inquire what effect the escape and voluntary return have upon the *status* of the debtor as a prisoner, in reference to the relative rights, duties and obligations of the execution creditor, the debtor, and the jailor, as between themselves. In case of a negligent escape, the jailor has a right to retake the prisoner on fresh pursuit, and return him to his former custody; and if he does so before action brought by the creditor for the escape, he is excused. So while the jailor has a right so to retake on fresh pursuit, the voluntary return of the prisoner after such escape and before action brought, is equivalent to a retaking on fresh pursuit. In neither case does the creditor acquire any right of action against the sheriff or jailor. Nor can the prisoner in either case set up his tortious escape against the will of the jailor to invalidate his imprisonment; but he is deemed to be still in custody by virtue of his original commitment. In legal contemplation he

was never out of custody after his commitment. The jailor has a right, as against the prisoner, to hold him in custody, and it is his duty to the creditor to do so. There is no ground, therefore, upon which it can be said that the escape which did not affect the legality of the imprisonment, or even give the creditor any right of action, absolved the town from its duty longer to furnish the necessary support to the prisoner, or to pay the plaintiff for furnishing it under compulsion of law. It is claimed that the rule allowing a sheriff to protect himself from liability for a negligent escape by showing recapture on fresh pursuit, or a voluntary return of the prisoner before action brought, is not the law in this state. It is suggested that it was by statute only that it prevailed in England. But this was a defense at common law, of which the sheriff might avail himself under the general issue without pleading it ; and by stat. 8 and 9 W. 3, chap. 27, § 6, it is provided that no retaking on fresh pursuit shall be given in evidence, unless it be specially pleaded, and accompanied by the oath of the defendant that the escape was without his consent, privity or knowledge. This statute does not give this defense, but simply recognizes its existence, and regulates the mode by which the defendant shall avail himself of it.

But even if a voluntary return or recapture on fresh pursuit would not be a defense by the sheriff to an action by the creditor, or if the creditor in this case had commenced suit against the sheriff after the escape and before the return of the prisoner, so as to make the sheriff liable, it is not easy to see how that helps the defendant ; for the mere fact that the sheriff is made liable to the creditor for an involuntary or negligent escape, does not deprive the sheriff of his right to retake the prisoner on fresh pursuit, or take him on his voluntary return, the sheriff never having voluntarily parted with the custody. It is said in the books that in such case the sheriff may take him and imprison him for his own security till he pays the execution, or so much thereof as the sheriff is compelled to pay the creditor on account of the debtor's escape. If the escape is by the consent of the sheriff or jailor, it is otherwise. We are referred by the defense to *Jameson* v. *Isaacs*, 12 Vt., 611, to show that a voluntary return after a neg-

ligent escape and before suit, is not a defense. But that was not a case of an escape from prison, but a departing from the liberties of the jail yard, to which the debtor had been admitted on giving a jail bond under the statute, for a breach of the condition of which the action was brought. The court in that case recognize the validity of such defense in case of a negligent escape from *prison;* but turn the case on the distinction between an escape from prison and a departing out of the liberties of the jail yard, under our statute, in violation of the express condition of the jail bond. COLLAMER, J., in that case says: " Our jail yards then are not prison limits, as in England or New York. An escape from the liberties of our jail yards, or prison liberties, is not a mere negligent escape from prison. It is a breach of the condition of the bond," &c., and " to such action a plea that the prisoner returned, would be no defense. After such a departure the sheriff must look to the bond alone for security. He cannot retake the debtor, and has no control over him, nor can his return confer this power. The debtor is therefore, on his return, not subject to the liabilities, nor entitled to the privileges, of an imprisoned debtor." As that case is put expressly on the distinction between a departing from the liberties of the jail yard under our statute, and an escape from the jail or prison itself, it is, so far as it bears upon the case at bar, an authority for the plaintiff.

Judgment of the county court reversed, and judgment for the plaintiff for the support of the prisoner for the time up to the bringing of the suit, according to the case stated.