THE BARTRON CLINIC, Appellant, v. KALLEMEYN, et al, Respondents.

(245 N. W. 393.)

(File No. 7329. Opinion filed November 28, 1932.)

*McFarland & Kremer,* of Watertown, for Appellant.

*Harold O. Lovre,* of Hayti (*M. Q. Sharpe,* Attorney General, and *R. F. Drewry,* Assistant Attorney General, of Counsel), for Respondents.

*Martens & Goldsmith,* of Pierre, for South Dakota State Medical Association and South Dakota State Hospital Association, amici curiæ.

CAMPBELL, P. J. One McNabb, accompanied by one Peterson, was driving an automobile containing a large quantity of alcohol upon the public highway in Hamlin county, S. D., and while so doing collided with another automobile. As a result of the collision McNabb and Peterson were quite seriously injured, as were also some of the persons in the second automobile, one of whom presently died as a result of her injuries. The circumstances were such that McNabb was later proceeded against and convicted upon a charge of manslaughter. See State v. McNabb (1932) 60 S. D. 431, 244 N. W. 651.

The collision on the highway occurred between 5:15 and 5:30 in the afternoon of October 30, 1929, and passers-by observing the situation stopped and investigated the matter sufficiently to ascertain that several of the collision victims were seriously injured, and conveyed such injured persons (including McNabb and Peterson) to the hospital of plaintiff at Watertown in Codington county, which was the hospital nearest to the scene of the accident. The taking of the injured persons to the hospital appears to have been without the direction or authority of the injured persons or any one else purely as a humanitarian act and in an endeavor to secure for said injured persons as quickly as possible the medical or surgical attention which their condition indicated that they urgently required. McNabb and Peterson were brought into the hospital about 6:30 in the evening or shortly thereafter.

Defendant Kallemeyn was sheriff of Hamlin county. He arrived at the scene of the accident about 6 o'clock, looked the situation over, talked to bystanders, and learned of the presence of the alcohol in the car which had been occupied by McNabb and Peterson. He put the alcohol into his own car, placed guards at the wreck, arranged for the clearing of the highway and returned to Hayti, the county seat of Hamlin county. It was apparent to the sheriff that the occupants of the liquor-laden car had committed at least one and perhaps several criminal offenses within the borders of Hamlin county, and he was desirous of apprehending them immediately. He had ascertained at the scene of the wreck that these men had been injured more or less seriously, and that passers-by had volunteered to take them to a hospital, probably at Watertown, the county seat of Codington county. Sheriff Kallemeyn

immediately placed a telephone call for the sheriff's office at Watertown and at 6:33 p. m. was put in communication with such office, talking to Deputy Sheriff Reilly of Codington county. Kallemeyn stated the facts briefly to Reilly and told him that his information was that these two men were being taken to some Watertown hospital. He asked Reilly to check the hospitals, locate the men, and if they were in such condition that they might be able to escape, to see that they were apprehended and held for him (Kallemeyn). As a result of this telephone conversation, Deputy Sheriff Reilly immediately started out to make a search as requested. He went first to plaintiff's hospital and there learned that the persons injured in the wreck had just been brought into the hospital. Reilly reached the hospital within a very few minutes after McNabb and Peterson had been brought in, while they were still awaiting attention, and before the arrival of Dr. Brown, who had been summoned by the hospital authorities as soon as the men had arrived. Reilly states that he went to the hospital to apprehend and hold these men for the sheriff of Hamlin county pursuant to his request, and Sheriff Kallemeyn had the same understanding of the situation and states that the men had been apprehended and held for him prior to the time that he personally arrived at Watertown. Reilly ascertained at the hospital that the men were so injured that there was no danger of their being able immediately to make any effort at escape, and he therefore made no effort to take actual physical custody of them. Somewhat later in the evening Sheriff Kallemeyn himself arrived at Watertown. He went to the hospital of plaintiff, found the two men there, and arranged to have guards placed over them and informed the hospital authorities that the men were in his custody. A day or two later a warrant was issued and both McNabb and Peterson were formally placed under arrest. Sheriff Kallemeyn subsequently took McNabb from the hospital for preliminary examination before a committing magistrate and then returned him to the hospital, where he remained from October 30, 1929, until January 27, 1930; Peterson had been discharged from the hospital on November 8. During the entire time that McNabb was in the hospital, Sheriff Kallemeyn, with the consent of the hospital authorities, maintained guards over him day and night, and the hospital furnished bed and other conveniences and facilities for the use of the guards. The charge made by plaintiff for

hospitalization of Peterson and medical and surgical services furnished to him was $90.75, for McNabb $832.45, and for the bed and facilities furnished to the guards for 89 days $133.50 It is stipulated in this case that all these charges are reasonable and fair for the services rendered.

Plaintiff demanded payment of these items both from Sheriff Kallemeyn and from Hamlin county, and payment being refused, this action was instituted to collect the same. Subsequently the man Peterson paid plaintiff for the services rendered to him, and the only matters left in question at the time of the trial below were the items of $832.45 for services rendered McNabb and $133.50 for facilities furnished for the guards. It is conceded that Sheriff Kallemeyn did not at any time in words specifically request plaintiff to render any services to McNabb and never promised or agreed that such services would be paid for either by himself or by Hamlin county. Defendants denied liability, and the case was tried to the court, a jury being waived. The court found the facts substantially as above set out; found that McNabb and Peterson were brought to plaintiff's hospital by third persons not connected with or authorized by the defendants; that they were received by plaintiff for hospitalization and treatment without the knowledge of the defendants; that defendants never requested plaintiff to attend these men and had no knowledge that plaintiff expected them, or either of them, to pay for such attention or treatment. Conclusions of law and judgment were in favor of the defendants for the dismissal of the complaint upon the ground that there was no contract, either express or implied, upon which plaintiff could recover from either of the defendants. From this judgment and a denial of its application for new trial, plaintiff has now appealed.

 Let us first examine the case upon the question of the liability of respondent sheriff. At least from the time of his arrival at appellant's hospital, and perhaps from the time of the arrival of Deputy Sheriff Reilly, Peterson and McNabb were apprehended and were in the technical custody of the sheriff of Hamlin county, accused of crime. It is not material that their formal arrest upon warrant did not take place until several days later. As the sheriff himself says, "They had been apprehended and held by me." In ordinary circumstances, under the laws of this state, the only place for persons in the custody of the sheriff accused

of crime (until discharged or released on bail) is the jail. Cf. section 10193, Rev. Code 1919. It is the duty of each county to establish and maintain a jail (section 10216, Rev. Code 1919), and if they have none their prisoners may be committed to the jail of a near or adjoining county (section 10206, Rev. Code 1919). No sheriff has any right as a privilege or indulgence to allow any prisoner in his custody to go outside the jail, and if he does so it amounts to a constructive escape. Comer v. Huston (1894) 55 Ill. App. 153; Colby v. Sampson (1809) 5 Mass. 310. The sheriff of Hamlin county by himself or one of his deputies (sections 10198, 10204, Rev. Code 1919) was in charge of the jail of Hamlin county. As such it was his duty to provide "nursing when required, and all necessaries for the comfort and welfare of the prisoners for which he shall be allowed the actual cost." Section 10203, Rev. Code 1919. In the usual case it is the duty of the sheriff when he apprehends a prisoner to confine him in the county jail and there provide for his necessities, including medical attention and nursing if required. It is a matter of common knowledge, however, that prisoners may upon occasion require medical or surgical care or nursing which it is absolutely impossible to furnish them in the county jail because of inadequate facilities. In the instant case the sheriff testified that he knew and realized that there were no adequate facilities for taking care of these injured men in the Hamlin county jail; that Hamlin county had no hospital facilities; and that Watertown was one of the nearest places where such hospital facilities existed. The sheriff is under legal obligation to furnish decent and reasonable care and treatment to prisoners in his custody. When the exigencies of the case are such, by reason of lack of facilities in the jail or otherwise, that care and treatment reasonably necessary to his physical well-being and perhaps his life cannot be furnished to the prisoner in the jail, it is a decent and humanitarian doctrine that permits and in fact requires the sheriff, in the exercise of a sound discretion, to place the prisoner under proper safeguards where he can have adequate care. Cf. Miller v. Dickinson County (1885) 68 Iowa, 102, 26 N. W. 31. Cf., generally, Spicer v. Williamson (1926) 191 N. C. 487, 132 S. E. 291, 44 A. L. R. 1280, and note 44 A. L. R. 1285.

Respondents urge upon our attention cases such as Roane v. Hutchinson County (1918) 40 S. D. 297, 167 N. W. 168, where-

in it was held that the obligation of a county to furnish poor relief is entirely statutory and that there is no law authorizing a county to pay for services voluntarily rendered to an indigent person unless such services were rendered pursuant to a contract, express or implied, made as provided by law with the proper county officers. Conceding the rule of such cases, we are unable to see that they are in point here. The duty to furnish necessary care for the prisoner is placed by statute upon the sheriff or his deputy. It arises the moment the prisoner is apprehended and continues until his discharge. If the sheriff is under an obligation to pay appellant, such obligation need not rest upon contract, express or implied. It arises from the fact that the sheriff was under a duty to furnish necessaries to his prisoner. Cf. Sanborn County v. Lutter (1923) 46 S. D. 363, 193 N. W. 55. If the language of contract could be used at all with reference to the situation, it could only be said that the duty of respondent sheriff to pay is quasi contractual, arising from the performance of the services by appellant while the prisoners were in the sheriff's custody and the statutory duty of the sheriff to furnish to his prisoners such things as may be reasonably necessary.

■ Respondents in their brief propound the following inquiry: "For the sake of analysis, let us first eliminate the fact that McNabb was arrested after his admittance to the plaintiff's hospital and that a guard was placed over him with the consent of the plaintiff. If such was the case, would there be any liability on the part of the defendants?" And they answer their own inquiry by the words, "Clearly not." In this they are, of course, correct. No duty rests on the sheriff until be assumes legal custody of the prisoner. From that moment forward the duty exists. Dominion and control over the entire situation are thenceforth vested exclusively in the sheriff. Wherever and however the prisoners are kept, such keeping must be deemed to be by the sheriff and no one else. When the sheriff assumed custody of these prisoners, the responsibility became his. From that moment neither the prisoners themselves nor appellant could effectively control their movements or determine when or how they would be kept or attended. Regardless of how McNabb and Peterson came to the hospital, from the time that they were apprehended and came into the custody of respondent sheriff their continuance in the hospital

was the act of the sheriff and no one else. He was thenceforth the person, and the only person, who could say whether these men, his prisoners, should remain in appellant's hospital or be removed to the jail of Hamlin county. He could not lawfully leave them in appellant's hospital excepting only upon one theory, namely, that they were his prisoners; that it was his duty as sheriff to provide reasonably for their welfare; and that their condition demanded and it was his duty under the particular circumstances to furnish care and attention of a type and kind that could not be provided in the county jail or elsewhere than in a hospital. It is quite clear upon the facts in this case that these men required hospitalization. When the sheriff came there and observed their condition, placed guards over them, and left them in the hospital, he was performing his official duty in the way that any humane man would have performed it. Since the sheriff could only be justified in leaving these prisoners in the hospital upon the theory that hospitalization was reasonably necessary for their welfare, we think the situation is no different from what it would have been had the prisoners been taken to the county jail of Hamlin county and thence immediately removed by the sheriff to appellant's hospital. When the sheriff permitted these men, his prisoners, to remain in appellant's hospital, he was announcing by his conduct that he was taking that method whereby to furnish them nursing and care which it was his statutory duty to provide. We think that the sheriff is liable for the charges in question, the reasonableness whereof is admitted, including the charge for bed and other facilities furnished to the guards stationed by the sheriff. In the final analysis the obligation need not rest upon any promise, actual or implied, upon the part of the sheriff, but is sustained by the fact that it was the duty of the sheriff to furnish reasonable care and nursing to these prisoners. The sheriff evidenced by his conduct that the method he had selected for the performance of that duty in the particular case was to keep these prisoners in appellant's hospital for attention which the sheriff knew they were receiving and to receive.

We come then to consider the liability of respondent county. We are unable to find such liability in this case, and as between appellant and the county, we think there is no primary liability. Our statute (section 10203, Rev. Code 1919) seems to contemplate that necessaries for prisoners shall be provided by the

officer in charge. For such things as it is reasonably necessary for such officer to provide the statute says that he "shall be allowed the actual cost." The sheriff permitted McNabb to remain in appellant's hospital for 89 days after his apprehension. He had the legal power to remove his prisoner at any time (being liable perhaps for abuse of that power under the circumstances). He must pay to the hospital, as we have held above, a reasonable compensation for services rendered to the prisoners during the time he left them there. Whether the sheriff when he pays the hospital, as he must, can recover the entire amount of such payment from the county, is a question which is not presented by this case and will depend upon whether all or a lesser part of the hospitalization furnished by the sheriff was reasonably necessary for the prisoners and could not have been adequately furnished at less expense in the Hamlin county jail, and other considerations of that nature. If appellant has any right against the county, it is only derivative from appellant's right against the sheriff and such rights as the sheriff may have against the county. Whether, if unable to collect from the sheriff, appellant might claim subrogation to such right as the sheriff has against the county in the premises, is a question not presented in this case. Neither do we consider in this case what may be the right of appellant, or of the sheriff if he pays, or of the county if it pays, against the prisoner McNabb; no such questions being here involved.

The judgment of the court below upon the facts found in this case should have been that appellant take nothing from respondent county and that respondent county have a dismissal at appellant's cost; that appellant recover as prayed in the complaint upon the second and third causes of action against respondent sheriff. The judgment appealed from is therefore reversed, and the cause is remanded, with directions to the trial court to enter conclusions of law and judgment as above set out. Appellants may tax the costs of this appeal against respondent sheriff, but respondent county, though successful as far as the appeal is concerned, not having appeared separately on the appeal from the respondent sheriff, will tax no costs in this court.

POLLEY, WARREN, and RUDOLPH, JJ., concur.

ROBERTS, J., deeming himself disqualified, not sitting.