STATE v. GLENN BAKER, Appellant.—No. 40063.—199 S. W. (2d) 393.

Division One, February 13, 1947.

*D. M. Cuthbertson* for appellant.

*J. E. Taylor,* Attorney General, and *Gordon P. Weir,* Assistant Attorney General, for respondent.

CONKLING, J.—Appellant was tried and convicted in the Circuit Court of Callaway County on the charge of escaping from the custody of officers guarding him on state prison farm No. 2, while out under guard, and while under sentence to and legally confined in the Missouri State Penitentiary for a term less than life. The jury assessed his punishment at imprisonment for two years, and from the judgment and sentence based upon such verdict he appealed.

In his motion for a new trial appellant complained generally of the trial court's action in "giving each and every instruction asked by the state", and in "refusing each and every instruction requested by the defendant". No reason was assigned for claiming the trial court erred in those respects and no effort was made to comply with the statutes. Those assignments are too vague to merit consideration. We have repeatedly ruled that such general assignments of error in a motion for new trial in a criminal case fail to comply with Section 4125 R. S. Mo. 1939, Mo. R. S. A. sec. 4125, and that thereby nothing with respect thereto is preserved for appellate review. State v. West, 349 Mo. 221, 161 S. W. (2d) 966; State v. Carpenter, 169 S. W. (2d) 403 (Mo.).

Appellant's second assignment of error in his motion for new trial directly challenged the trial court's ruling at the close of all the evidence in refusing to peremptorily instruct the jury to return a verdict of acquittal. By such assignment we must review the evidence. Appellant's brief states that the sole question on this appeal is whether under the intendment of the statute, Section 4307 R. S. Mo. 1939, appellant "could be constructively under guard while not accompanied by a guard at the time of his alleged escape." Research discloses that this precise question is one of first impression in this state.

There is no dispute as to the facts. Appellant was lawfully confined in the Missouri State Penitentiary for a term less than life. For sometime prior to March 30, 1946 appellant was assigned to duty at prison farm No. 2, and, with other prisoners likewise assigned,

answered roll call at the prison farm dormitory at six P. M. on that day. At the close of the day's work at six P. M., after a roll call at the dormitory, the prisoners were given supper, and thereafter a rest period until seven P. M. During such daily rest period the prisoners were permitted to go outside the dormitory for fresh air and relaxation. At seven the prisoners were returned to the dormitory, ▓▓▓▓ which was then locked for the night. During the rest period some of the prisoners were allowed to move around outside within certain limits and were often permitted to go down to the river bank at the edge of the prison farm. In some instances prisoners were allowed to go, to other parts of the farm, so long as they remained within the boundaries designated by the guards, but to return promptly at seven P. M. The prison farm, boundary to boundary, was constantly under guard as prisoners were aware. At all times the prisoners were under supervision and custody of a prison guard.

On March 30, 1946, after appellant and other prisoners had reported in for six P. M. roll call and had their supper, they went outside the dormitory. Appellant and one Cunningham, a fellow prisoner, went to the river bank about a fourth of a mile from the dormitory. When returning and when about an eighth of a mile from the dormitory they heard the seven o'clock whistle blow. Cunningham testified they were aware of the disciplinary results of being late and feared being returned to the inside of the walls of the penitentiary. They discussed the punishment measures which might be imposed for a late return to the dormitory, and then and there decided to leave the prison farm, did so, and thus escaped.

Later that evening another roll call was made and the absence of Cunningham and appellant was noted. The next day the two men were recaptured by officers at a point some miles north.

State prison farms are part and parcel of the penitentiary. The escape of a prisoner from a state prison farm is an offense prohibited by and punishable under the statute in question, Sec. 4307, R. S. Mo. 1939. State v. Betterton, 317 Mo. 307, 295 S. W. 595, Ex parte Rody, 348 Mo. 1, 152 S. W. (2d) 657.

While the record affirmatively shows that the prisoners were under the constant supervision and custody of the guard, and so understood that they were, yet the record further discloses that the guard did not always go with the prisoners to the river during their six to seven P. M. rest hour, but with the "permission and favor" of the guard, the prisoners sometimes moved about within that narrow territorial limit while the guard remained at or near the dormitory.

Does the mere fact that the guard did not always go, and on this occasion did not actually go, with appellant and Cunningham to the river, a distance of about four hundred forty yards, relieve appellant from being "out under guard" within the intendment of the statute? We think not. Does the mere fact that at the time ap-

pellant and Cunningham decided to and actually did escape, the guard was about two hundred twenty yards away militate against appellant being in the "custody of the officers" within the intendment of the statute? We do not think so.

Under the circumstances shown by the record testimony appellant was a prisoner and in the custody of the guard. Imprisonment or custody may be either by physical restraint, or by a superior force acting as a moral restraint, but there must be an actual or constructive custody. Under these circumstances it has been held that the custody of a prisoner is not abandoned. In State v. McInerney, 165 Atl. 433, 53 R. I. 203, prisoners were taken from a prison to a prison farm to drive, milk, feed cows and to do other work. Later McInerney was missing but that fact was not observed until some time later. In ruling that case the court held: "Failure of the guard to notice the escape for five minutes or a longer period would not constitute an abandonment of his custody, for custody of a prisoner is not abandoned until his sentence is completed or he is pardoned and receives his discharge therefrom. . . . Furthermore, it is well settled that, whatever may be the conduct of the jailer, the prisoner cannot shield himself therewith from the charge of escaping custody if he leaves the place of his confinement. Riley v. State, 16 Conn. 47; State v. Wright, 81 Vt. 281, 69 A. 761; Saylor v. Com., 122 Ky. 776, 93 S. W. 48, 49; Jenks v. State, 63 Ark. 312, 39 S. W. 361. . . . Wherever a prisoner is assigned to work, he is, until discharged, still in custody, and, if he leaves such custody, he becomes guilty of escaping. ▇▇▇ In 9 Cyc., pp. 876, 877, it is said: 'A person convicted of felony and sentenced to confinement . . . is in contemplation of law in prison until he serves his term or is pardoned, although he may have been hired out to work for a contractor for convict labor.' In Saylor v. Com., supra, it was held: 'The appellants, though not in jail, were in the custody of the jailer, and when they escaped from the guard . . . they escaped from jail. The jailer is authorized by the statute to work the prisoners on the highway, and while there they are as fully in his custody as when actually in jail. To escape from the custody of the jailer, is to escape from jail within the meaning of the statute.' " Under the applicable legal principles and under these facts the custody did not terminate when the guard allowed appellant certain limited liberties by permitting him to walk a short distance on a prison farm to a river bank. Custody refers not only to the actual corporeal and forcible detention of a prisoner, but also to measures whereby one person exercises any control over the person of another which confines such other person within certain limits. To be under guard it was not essential that the guard be near enough to appellant to actually touch him. Appellant was nonetheless in custody and under guard even though his guard was some yards away. This ruling on these facts is not new to the law. In Jenks v. State,

63 Ark. 312, 39 S. W. 361, a convict serving a term in a penitentiary was made a trusty while on special work outside the penitentiary. He neither ate nor slept with the other convicts, but ate at a special table and slept in a house outside the stockade. Unaccompanied by a guard he was occasionally allowed freedom to move about within certain limits, but at stated times was required to report to the warden, perform certain duties and obey prison rules. While out alone and not accompanied by a guard, he escaped. In ruling that case the court said: "Although Jenks had been made a trusty, and was not confined in the walls of the penitentiary, or kept under guard, yet he was required to remain within certain bounds, to do work, and to obey prison rules. He was, in law, still a convict in custody, serving his term of imprisonment." Authorities could be multiplied. Under the facts here when appellant was on that portion of the prison farm whereon, with the permission and favor of the guard, appellant was allowed to take a short and unaccompanied walk during his rest hour he was in contemplation of law in custody and under guard. But when appellant went away from the limited place he had been permitted by the guard to walk, with an intent to escape and without authority of law, it was in direct violation of the statute under which he was charged and convicted. The trial court did not err in submitting the case to the jury.

The indictment, verdict and judgment are in form and sufficient. The judgment was responsive to the verdict of the jury and the evidence. Defendant had a fair trial and his guilt was clearly established. The judgment of the Circuit Court must be and is hereby affirmed. All concur.