JAMES E. MANGAN'S ADMX. *v.* GENO N. FRANZONI.

(75 A2d 665)

May Term, 1950.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed October 3, 1950.

*Bloomer & Bloomer* for the plaintiff.

*Christopher A. Webber* and *Philip M. M. Phelps* for the defendant.

BLACKMER, J. This is an action against the sheriff of Rutland County for the escape of a prisoner confined in the Rutland County Jail upon a close jail execution issued pursuant to V. S. 47, § 2246. Trial was by court; findings of fact were filed, and judgment for the plaintiff entered in the sum of $500.00 and costs. Both parties filed bills of exceptions.

The following facts were found. The defendant has been at all material times the sheriff of Rutland County, and the keeper of the county jail within and for that county. The plaintiff secured a judgment against one Bernard J. Smith, Jr., in an action of tort. An execution issued bearing a close jail certificate. By virtue of that precept Smith was committed to the Rutland County Jail on Feb. 10, 1948. On Feb. 15, 1948, Smith fell while in the jail and sustained an injury. Three licensed and practicing physicians examined Smith in the jail. They recommended to the defendant that Smith ought to be taken to the Rutland City Hospital for treatment, there being no "conveniences" at the county jail for his treatment there. The defendant took Smith to the hospital, leaving word with the hospital superintendent to advise the defendant before releasing Smith. On July 19, 1948, two licensed and practicing physicians advised the defendant that Smith would benefit by being a patient at the White River Junction Veterans'

Hospital, and suggested his immediate transfer to that institution. The defendant consented to such transfer, and notified the doctor in charge of the Veterans' Hospital "to let him know when the said Smith was released." During the latter part of November, 1948, Smith was released from the Veterans' Hospital and went to his father's home in Fair Haven. While at his father's home, Smith went about in Fair Haven and elsewhere as he desired. During the time Smith was at the Rutland City Hospital, at the Veterans' Hospital, and at his father's home he was not in the custody of the defendant, nor of any officer or deputy of the defendant. The plaintiff never consented to Smith's transfer to the Rutland City Hospital, his removal to the Veterans' Hospital, his discharge from the latter hospital, or his presence at his father's home. The Veterans' Hospital never notified the defendant that Smith was to be or had been discharged from that institution. He first learned that "Smith is out" from the plaintiff "in the early part of 1949." This suit was brought April 4, 1949. On the same day the defendant left word at Smith's father's home that Smith should return to the Rutland County Jail. Smith returned to the Jail on Apr. 6, 1949, and was confined there at all later pertinent times. No court of record or other legal authority ever released Smith from the county jail. "The plaintiff has sustained reasonable damages amounting to $500.00 by reason of the defendant allowing Smith to escape." At the time Smith was originally committed to the Rutland County Jail, and at all times thereafter, he had no property with which to pay the execution upon which he was committed, either in whole or in part, except a disabled veteran's pension of $13.80 each month and the sum of $80.00 received as unemployment insurance. The pension is not assignable, and is exempt from the claims of creditors. Smith has never paid any part of the execution. The amount due thereon is $2938.06.

The defendant's exceptions present the question whether there was an escape; both the plaintiff's and the defendant's exceptions challenge the propriety of the assessment of damages at $500.00.

■ The keeper of a jail is required to safely keep a prisoner committed to his custody until discharged from imprisonment, and shall be liable for escapes made from such jail. V. S. 47, §§ 2236 and 2237, which so enact, are declaratory of the common law.

■■ The books are full of cases holding that every liberty given to a prisoner, not authorized by law, is a voluntary escape,

354

or that the slightest violation by a sheriff of his duty renders him liable to the judgment creditor for a voluntary escape of the prisoner. *Lowrey* v. *Barney & Read,* 2 D Chip 11; *Day* v. *Sweetser,* 2 Tyler 283, 287; *Wait* v. *Dana, Brayt* 37; *Leonard* v. *Hoyt,* Brayt 73 (Case 2); *Ward* v. *Barnard,* 1 Aiken 121; *Jameson* v. *Isaacs,* 12 Vt. 611, 614; *Servis* v. *Marsh,* 38 Fed 794, 796; *Colby* v. *Sampson,* 5 Mass 310, 312; *De Grand* v. *Hunnewell,* 11 Mass 160, 161; *Richardson, Exr. of Browning* v. *Rittenhouse,* 40 NJL 230, 235; Chase's Blackstone 2nd Ed. 815; *Boynton's Case,* 3 Co. Rep 43 a; *Benton* v. *Sutton,* 1 B. & P. 24, 26; 50 CJ Prisons § 57. Yet most of this law is, under the new and enlightened systems of the present day, outmoded if not practically obsolete. *Comer* v. *Huston,* 55 Ill App 153, 157. Confinement in close jail serves the manifestly useful purpose of compelling the debtor to make compensation for tortious injuries arising from his "wilful and malicious act or neglect," to quote V. S. 47, § 2246. And see *Day* v. *Sweetser,* 2 Tyler 283, 287. Although a sheriff may not, as an indulgence or privilege, relax the strictness of close jail confinement, it cannot in this generation be properly said that he is to be held conclusively liable as for an escape upon proof that he has taken or allowed the prisioner to be out of jail in the custody of the sheriff or his deputy. If the absence of the prisoner from the jail is but temporary and for justifiable and good cause, and the control of the sheriff is at all times maintained, either personally or through the agency of a deputy, there is no escape. But if such absence is a mere indulgence or privilege granted the prisoner, then there is a voluntary escape, for which the sheriff is liable in damages. *Comer* v. *Huston, supra,* 158; *The Case of Sir Miles Hobert and William Stroud, Esq.,* Cro Car 209, 210, 79 Reprint 784; *Wool* v. *Turner,* 10 Johns 420. And see *Riley* v. *Whittaker,* 49 NH 145, 147, 148, 6 Am Rep 474. *Sanderson* v. *Town of Rutland,* 43 Vt 385, cited by the defendant, may incline the same way, but its authority is largely vitiated because the court's ruling that there was no voluntary escape was placed squarely upon a concession of counsel to that effect.

█ It is implicit in the findings that hospital treatment for the prisoner as advised by the physicians was reasonably necessary, both in the Rutland City Hospital and at the Veterans' Hospital. We hold that hospital treatment, when reasonably necessary, is a justifiable and good cause for the removal of a prisoner to such an institution. But the supervision and control of the authorities at

such hospitals is a far cry from that "salva et arcta custodia"—safe and strict or close custody (*Day* v. *Sweetser,* ·supra, 287)—which the law requires. The sheriff's custody and control of the prisoner ceased when he placed Smith at the Rutland City Hospital in charge of those not the sheriff's deputies. Smith was then in no legal custody at all. *Benton* v. *Sutton,* 1 B & P 24, 26; *Comer* v. *Huston, supra,* 158; 50 C. J. Prisons, § 57. The escape continued when Smith went to the Veterans' Hospital, and a fortiori when he went to his father's home. That the defendant told the officials of the two hospitals not to discharge Smith without notifying him—an order which the sheriff had no authority to give and which the officials were under no duty to obey—does not signify on the question of escape. The trial court correctly ruled, on the facts found, that the defendant sheriff was liable for a voluntary escape.

Now we turn to the matter of damages. On Nov. 2, 1793, the legislature passed an act entitled "An Act in Addition to an Act, Entitled, an Act Regulating Gaols and Gaolers." This act, with changes not necessary to mention, has been a part of the statute law ever since, and is now V. S. 47, § 2241. In its present form it reads thus: "In an action for an escape, such keeper may prove the circumstances attending the same and the circumstances and property of the prisoner when he escapes. The creditor shall recover only the reasonable damages which he suffers in consequence of the escape, and his costs."

There are two lines of authority with reference to damages for escapes. The one, where the action is case, holds that actual damages only may be recovered. *State Treasurer* v. *Weeks,* 4 Vt 215, 223-224; *Brooks* v. *Hoyt,* 6 Pick 468, 469, 23 Mass 468, 469; 19 Am Jur Escape, §§ 45-46. The other, where the action is debt, holds that the amount of the execution on which the prisoner is held measures the damages, and that the insolvency of the prisoner may not be shown. *The State ex rel Billman* v. *Hamilton,* 33 Ind. 502; *Lakin et al* v. *The State ex rel Parker et al,* 89 Ind. 68, 71, 73; *Hoagland* v. *State ex rel Schreiber,* 22 Ind App 204, 40 NE 931, 59 NE 336, 72 Am St Rep 298; 19 Am Jur Escape, § 46; Chase's Blackstone, 2nd ed. 714. The Indiana cases and Blackstone base the result on the Statutes of Westminister 2, Ch. 11 (13 Ed.1) and 1 Rich II Ch 12, which give an action of debt for escape against sheriffs, and which are a part of the common law of Indiana.

There is no need to determine whether the Statute of West-minister, supra, and the Statute of 1 Rich II, supra, ever became a part of our common law under R. 1787 p. 30, now V. S. 47, § 1263. If they did, they were superseded by V. S. 47, § 2241 and its antecedents, which in terms apply to all actions for escapes, without differentiation between case and debt, or tort and contract.

The record does not show whether the present action sounds in tort or contract. In either event, the result is the same: The sheriff was entitled to show, in mitigation of damages, the financial situation of the prisoner. In *Wait* v. *Dana,* Brayt 37, the form of action is not indicated, and the same result is reached. And see *Weeks* v. *Lawrence,* 1 Vt 433, 438-439. The following authorities cited by the plaintiff involve different problems: *Goodrich* v. *Starr,* 18 Vt 227, and Sedgwick on Damages, 9th ed., Vol. 2, p. 1067, Par. 554 (failure to serve process); *Vilas* v. *Barker,* 20 Vt 603 (failure to assign jail bond); and *Wheeler* v. *Pettes,* 21 Vt 398 (failure to take a sufficient bond).

On the facts found, the prisoner at no time had any property which could be applied on the execution. His pension was found to be exempt, and what he received as unemployment insurance was exempt under V. S. 47, § 5401. There is nothing to support the assessment of damages at $500.00. Since no actual damages were shown, the plaintiff was entitled to recover nominal damages and her costs, and no more. *Town of Middlebury* v. *Haight,* 1 Vt 423, 425; *State Treasurer* v. *Weeks,* 4 Vt 215, 224.

The plaintiff expresses grave concern that the result reached herein will permit sheriffs to release, with relative safety, impecunious prisoners confined on close jail executions, and thereby virtually nullify V. S. 47, § 2246. A like argument was made to and rejected by the Massachusetts Supreme Judicial Court in *Brooks* v. *Hoyt,* 6 Pick. 468, 469, 23 Mass 468, 469. There are several deterrents which to our mind will effectively prevent the result which the plaintiff fears. V. S. 47, § 8529 (III) provides that a person who directly or indirectly aids a prisoner in escaping from jail shall be punished. V. S. 47, § 8580 establishes a penalty for a county officer who neglects to perform the duties imposed on him by law. It may be that exemplary damages are recoverable in a proper case, but this point is neither raised nor considered. See 19 Am Jur Escapes, § 47, and 25 CJS Damages, § 125 c. And more, it is our observation that the pressure of public opinion is

felt in this state, at the polls and otherwise, by public officials who are derelict in their duties.

*Judgment reversed. Judgment that the plaintiff recover from the defendant $1.00 and costs.*