SAXTON et al., Appellants v. SANBORN COUNTY, et al.,
Respondents

(74 N.W.2d 843)

(File No. 9530. Opinion filed February 15, 1956)

**Temmey & Luby,** Huron, for Appellants.

**Morgan & Fuller,** Mitchell, for Respondent John P.
Wolter, Sheriff of Sanborn County.

**F. D. Richards** and **R. B. Palmer,** Woonsocket, for
Respondent Sanborn County.

**Fosheim & Blue,** Huron, Amicus Curiae.

RUDOLPH, J. The issue presented in this case con-
cerns the liability of the Sheriff of Sanborn County and
Sanborn County for medical care furnished the defendant
Ted Cooper. The trial court determined that neither the
sheriff nor Sanborn County was liable. Plaintiffs have ap-
pealed.

Ted Cooper was in jail in Sanborn County. The defendant sheriff was the jailer. In a conversation with the sheriff and State's Attorney, Cooper indicated he would plead guilty to the offense for which he was held, but requested permission to go to his home in Huron and prepare his house for winter. This request was granted. The work was not completed in one day as estimated and permission was given Cooper to spend a second day in Huron. The evening of the second day Cooper became ill, a doctor was called and Cooper was placed in a Huron hospital. Cooper's wife immediately called the Sanborn County Sheriff, told him what had happened and the sheriff stated, "If he is sick he has to go, that is all there is to it". Cooper was seriously ill, two major operations were performed requiring hospitalization for about nine weeks.

The day following the evening Cooper was taken to the hospital the sheriff made a trip to Huron, called on Cooper and was advised Cooper's illness was serious. During the hospitalization the sheriff made several other trips to Huron for the purpose of determining Cooper's condition and when his release from the hospital could be expected. Cooper was released from the hospital December 22, 1953 and remained at his home in Huron for some time thereafter. In March, 1954, the sheriff went to Huron intending to take Cooper back to Sanborn County and place him in jail. However, the sheriff of Clark County had arrested Cooper the day before and placed him in jail in Clark County. Cooper pleaded guilty to the Clark County charge. When released from the penitentiary he was returned to Sanborn County by the sheriff, where he pleaded guilty to the original charge.

■ We consider first the liability of the sheriff. If the sheriff is liable for this medical care of Cooper, such liability does not rest upon contract as there was none. It arises from the fact that the sheriff was under a statutory duty to furnish necessaries to a prisoner. This statutory duty of the sheriff relates to the time when prisoners are in his custody, but it is not essential that the prisoner be in the custody of the sheriff when received at the hospital where such care is furnished. Bartron Clinic v. Kallemeyn, 60

S.D. 598, 245 N.W. 393. The rule announced in the above cited case clearly makes the sheriff's liability dependent upon custody. It has been suggested that the sheriff cannot escape such liability by unlawfully releasing a prisoner from custody and thus place the liability elsewhere. But we must keep in mind that this liability is purely statutory and relates to a prisoner in custody. The liability of the sheriff for unlawfully surrendering custody of a prisoner is fixed by other sections of our code, viz., SDC 13.1231, 13.1301 and 48.0203.

The question presented is whether Cooper was in the custody of the sheriff of Sanborn County at the time this medical care was furnished.

There are cases relating to the liability of a sheriff where the prisoner is held under a civil arrest and the statute makes the sheriff liable for an escape. At the outset these cases held "that nothing but the act of God or the public enemy will justify the sheriff in permitting a prisoner for debt to be outside the jail" etc. Comer v. Huston, 55 Ill.App. 153. However, this strict rule of liability has been modified. We quote from the cited case:

> "The duty of a sheriff, as we are disposed to declare the law now to be, is that he shall keep such debtor confined in the jail and grant him no privilege or indulgence inconsistent with his condition as a prisoner, and permit no relaxation of the confinement of the person of such debtor, to the end not only that the body of the prisoner may be at all times in the control of the sheriff, but also that the imprisonment may be actual, irksome, and a source of discomfort, so far as close and rigorous confinement in the jail may produce such results. Yet, while a sheriff may not, as an indulgence or privilege, allow the debtor to go outside the jail, it can not, we think, be said that he is to be held conclusively liable as for an escape, upon proof that he had taken or allowed the debtor to be out of jail. He may show the circumstances which induced him to so act, and from such circumstances it may be determined whether the absence of the prisoner from the jail was but temporary and for justifiable and good cause or was a mere indulgence or privilege granted the prisoner."

Typical of these cases is the case of Mangan's Adm'x v. Franzoni, 116 Vt. 351, 75 A.2d 665, 666, where a person had been imprisoned under a statute which provides:

> "A person shall not be admitted to the liberties of the jail yard, who is committed on execution upon a judgment rendered in an action founded on a tort, when the court, at the time of such judgment, adjudges that the cause of action arose from the wilful and malicious act or neglect of the defendant, and that the defendant ought to be confined in close jail, and a certificate thereof is stated in or upon such execution." Vermont Statutes 1947, § 2246.

The Vermont court refers to the commitment of the prisoner as being under "a close jail certificate." While in jail the prisoner was injured, and the sheriff on the advice of doctors placed him in a hospital. The court held that the "supervision and control of the authorities at such hospitals is a far cry from that 'salva et arcta custodia'—safe and strict or close custody, * * *." In the opinion the court said: "The sheriff's custody and control of the prisoner ceased when he placed Smith [the prisoner] at the Rutland City Hospital in the charge of those not the sheriff's deputies. Smith was then in no legal custody at all."

There are other cases relating to escapes by prisoners under statutes which make an escape by a prisoner a criminal offense. In the case of Jenks v. State, 63 Ark. 312, 39 S. W. 361, it was held that a prisoner who was made a trusty, who was not confined to the penitentiary or kept under guard but who had to remain within certain bounds and obey prison rules was in custody and was guilty of committing the crime of escape when he left the county. See also State v. Baker, 355 Mo. 1048, 199 S.W.2d 393.

Our statute, SDC 13.1231, makes the sheriff guilty of a misdemeanor if he "Willfully or negligently allows any person lawfully held by him in custody to escape or go at large, except as may be permitted by law; * * *." Under this section of our law the terms "escape" and "go at large" are placed in opposition to the term "custody". In other words a sheriff who permits a prisoner to "go at large" is guilty of misdemeanor on the theory that such act like an

escape deprives the sheriff of custory. In this respect the fact situation in this case differs from the Arkansas case, above cited, and similar cases, where the person in custody of a prisoner made him a trusty with certain privileges all in conformity with the law.

 We are convinced that when the sheriff permitted Cooper to go to his home in Huron under the facts here presented he allowed Cooper to "go at large" and relinquished custody over him. The question then arises whether the sheriff regained custody of Cooper prior to time the medical services were performed. To establish that the sheriff regained custody of Cooper we believe it essential that the record show some act on behalf of the sheriff consistent only with retaking Cooper into his custody and inconsistent with his permission to Cooper to go at large. Obviously this case differs from the Kallemeyn case in this respect as in that case the sheriff had guards over the men in the hospital. Whether it is necessary to always place guards over hospitalized prisoners to retain custody we express no opinion, but certainly such act permits no doubt regarding custody. As we read this record all of the sheriff's acts subsequent to Cooper's hospitalization and until March 1954 when he went to Huron to get Cooper and return him to jail are consistent with his original permission to Cooper to go at large. When first advised that Cooper was sent to the hospital the sheriff said neither "yes" nor "no". He simply recognized the fact that if he had to go he had to go. His trips to Huron were for the purpose of determining the seriousness of Cooper's illness and when his release might be expected, all consistent with retaking custody only when in his judgment the proper time arrived. And when Cooper was released from the hospital the sheriff made no attempt to place him in jail but permitted him to remain at his home for a period of more than two months and until picked up by the Clark County authorities.

The trial court determined that Cooper was not in the custody of the sheriff during the time material to this dispute. We concur.

Under the rule announced in the Kallemeyn case there is no primary liability of Sanborn County to plaintiffs.

The judgment appealed from is affirmed.

SMITH, SICKEL and RENTTO, JJ., concur.

ROBERTS, P. J. dissents.

ROBERTS, P. J. (dissenting). I dissent from the opinion of the majority. To me the facts in the instant case do not differ materially from those in Bartron Clinic v. Kallemeyn, 60 S.D. 598, 245 N.W. 393, 395. In that case the sheriff of Hamlin County apprehended two persons after their admittance to a hospital in another county. This court in that case said that the sheriff "could not lawfully leave them in appellant's hospital excepting only upon one theory, namely, that they were his prisoners; that it was his duty as sheriff to provide reasonably for their welfare; and that their condition demanded and it was his duty under the particular circumstances to furnish care and attention of a type and kind that could not be provided in the county jail or elsewhere than in a hospital." Ted Cooper was not at liberty in the sense that the sheriff was not further concerned with him and had no right to apprehend. He was in the hospital with the knowledge and consent of the sheriff who had a duty or responsibility in the matter and as stated in the Bartron Clinic case his continuance in the hospital resulted from the act of the sheriff and no one else.