Trusty Camp — Penitentiary Inmate — Authorized The Department of corrections has the authority to operate in cooperation with Department of Vocational Rehabilitation a trusty camp in which prisoners would receive vocational training including on job employment outside the camp confines under the authority of 57 O.S. 521 [57-521] and 57 O.S. 510 [57-510]. The Attorney General has had under consideration your letter of February 29, 1968, requesting an opinion. The Department of Corrections and Department of Vocational Rehabilitation are seeking a grant under the Federal Manpower Development Training Act to establish a trusty camp where, prior to their release, inmates of the Oklahoma State Penitentiary and Reformatory could receive additional vocational training including some on-the-job employment outside the camp. Although housed at the camp facility some inmates would work at outside jobs with minimum supervision by guards. You ask: Does the Oklahoma Department of Corrections have the authority to act cooperatively with the Oklahoma Department of Vocational Rehabilitation in the establishment of a trusty camp where inmates receive additional vocational training including some on the job employment outside the camp? 57 O.S. 510 [57-510] (1957), provides in part: "The Director shall have the following specific powers and duties relating to the penal institutions: . . . . "(d) To maintain such industries, factories, plants, shops, farms and other enterprises and operations, hereinafter referred to as prison industries, at each institution as he deems necessary or appropriate to employ the prisoners, or teach them skills, or to sustain the institution; "(f) To provide for the education, training, vocational education, rehabilitation and recreation of prisoners; . . . . "(i) To transfer prisoners from one institution to the other; . . ." 57 O.S. 521 [57-521] (1967), provides: "Whenever a person is convicted of a felony and is sentenced to imprisonment that is not to be served in a county jail, he shall be committed to the custody of the Department and shall be classified and assigned to the Oklahoma State Penitentiary, or to the Oklahoma State Reformatory, or to another facility operated by or under the jurisdiction of the Department." From these provisions it is clear that a convicted felon is committed to the custody of the Department of Corrections whereupon the Director has the express duty to provide vocational education, training, and rehabilitation. Such custody is not restricted to the Penitentiary at McAlester or the Reformatory at Granite since 57 O.S. 521 [57-521], provides that prisoners may be assigned to "another facility operated by or under the jurisdiction of the Department." It seems apparent that a trusty camp for vocational training would qualify as another facility under the jurisdiction of the Department. It would also appear that prisoners could be assigned to employment outside a trusty camp although a guard might not be physically present at the place of employment where the prisoners are in the custody of the Department. 72 C.J.S., Prisons, Section 18, p. 872, states: "Ordinarily, a jailer or like prison official is vested with a certain amount of discretion with respect to the safekeeping, security, and discipline of his prisoners, and his acts, in this respect should be upheld, if reasonably necessary to effectuate the purpose of imprisonment, so that the courts will not interfere, where it does not appear that he has misused his power for the purpose of oppression." In Everett v. Holcomb, 1 Ga. App. 794,58 S.E. 287, 289, the court held: " 'Custody,' in criminal law, is the same thing as detention, in civil law, and is synonymous with 'imprisonment.' . . . 'Imprisonment' is the detention of a person contrary to his will." In Giles v. United States, 157 F.2d 588 (9th Cir. 1946), cert. den. 331 U.S. 813, 67 S.Ct. 1197,91 L.Ed. 1832, a prisoner performing chores on docks some three-eighths of a mile from the prison walls was held to be in "custody" notwithstanding that a guard did not follow the prisoner around and keep the prisoner under observation every moment. In Tucker v. United States,251 F.2d 794 (9th Cir. 1958), the prisoner was taken to a county hospital and he was held to be in "custody" notwithstanding that the prisoner was not accompanied by a deputy sheriff and was not being watched by a nurse on the trip to the clinic. In Janks v. State, 68 Ark. 312,39 S.W. 361, the court held: "Although Janks had been made a trusty, and was not confined in the walls of the penitentiary, or kept under guard, yet he was required to remain within the certain bounds to do work, and to obey prison rules. He was, in law, still a convict in custody, serving his term of imprisonment." In State v. Baker,355 Mo. 1013, 199 S.W.2d 393, a prisoner on a prison farm was allowed by a guard to walk without supervision and unaccompanied outside of any fence and was held to be in custody. The court held: "Custody refers not only to the actual corporeal and forcible detention of a prisoner, but also to measures whereby one person exercises any control over the person of another which confines such other person within certain limits." . . . . "Imprisonment or custody may be either by physical restraint, or by a superior force acting as a moral restraint, but there must be an actual or constructive custody." In State v. McInerney, 53 R.I. 203,165 A. 433, the court held: "Wherever a prisoner is assigned to work, he is, until discharged, still in custody, and if he leaves such custody, he becomes guilty of escaping." Accordingly, a prisoner assigned to on-the-job employment outside the confines of a trusty camp would be under the control and detention of the Department. Such a prisoner would be, in effect, imprisoned and in constructive custody. We do not purport in this opinion to speak on all fact situations that might arise in a program of on-the-job employment. It is possible that in some circumstances of inadequate supervision by the Department that a prisoner would no longer be in custody. Therefore, it is the opinion of the Attorney General that the Department of Corrections has the authority to operate in cooperation with the Department of Vocational Rehabilitation a trusty camp in which prisoners under the supervision of the Department of Corrections would receive vocational training even though assigned to on-the-job employment outside the camp confines. (Penn Lerblance) ** SEE: OPINION NO. 70-270 (1970) **