Dear Senator Melton:
This letter is in response to your questions asking:
 1. What duty does a law enforcement agency (city or county) have regarding medical attention for a person in legal custody; i.e., under arrest or incarcerated?
 2. Who is responsible for initial payment for emergency treatment and transportation of the person in custody?
 3. What duty does an ambulance service have to transport a prisoner when:
 a. the illness is non-life-threatening and no payment can be expected; or
 b. the agency with custody of the person refuses to send an accompanying officer with the ambulance?
 4. In the event a prisoner is transported by an ambulance service and, en route, with out the accompanying officer, the prisoner becomes violent injuring an ambulance crew member or is himself injured, who then is responsible for damages?
You further state:
 Prisoner in the jail of County A becomes ill. The sheriff calls an ambulance to transport the prisoner to hospital. The sheriff does not send a deputy with the prisoner who, en route to the hospital, becomes violent and injures an ambulance attendant.
Section 221.120, RSMo 1978, provides:
 In case any prisoner confined in the jail be sick, and, in the judgment of the jailer, needs a physician or medicine, said jailer shall procure the necessary medicine or medical attention, the costs of which shall be taxed and paid as other costs in criminal cases; or the county court may, in their discretion, employ a physician by the year, to attend said prisoners, and make such reasonable charge for his service and medicine, when required, to be taxed and collected as aforesaid.
We believe Section 221.120 imposes a duty on a county jailer to procure necessary medical attention for his prisoners. We further believe that principles of constitutional law mandate that a jailer obtain necessary medical attention for his prisoners, even in the absence of a statutory requirement.
The Eighth Amendment to the United States Constitution, and Article I, Section 21, Missouri Constitution, prohibit the infliction of cruel and unusual punishment. In Estelle v. Gamble,429 U.S. 97 (1976), the Supreme Court of the United States applied the Eighth Amendment as follows:
 An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," . . . the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. . . . The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that "It is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty care for himself." [citations omitted.]
We believe the duty to provide necessary medical care imposed under the Estelle rationale applies both to county jailers, who fall under the aegis of Section 221.120, and city jailers, to whom the constitutional principles apply.
We do not perceive your first question to be limited to prisoners who are serving a sentence; we believe your question extends to persons who are arrested by county or city law enforcement agencies and who need medical attention prior to incarceration.
Although we find no Missouri appellate cases in point, it is logically inconsistent for the Eighth Amendment's prohibition against cruel and unusual punishment to attach only after confinement commences. Therefore, we believe the duty to provide necessary medical attention arises the moment the person comes into police custody and extends until his discharge. See, Estelle v. Gamble,supra, Bartron Clinic v. Kallemeyn, 245 N.W. 393 (S.D. 1932);Massachusetts General Hospital v. City of Revere, 434 N.E.2d 185
(Mass. 1982); Lutheran Medical Center of Omaha v. City of Omaha,281 N.W.2d 786 (Neb. 1979).
It is, therefore, our opinion that cities and counties must provide necessary medical care for persons in their legal custody, from the time of initial arrest until discharge.
Your second question asks who is responsible for the initial
payment for emergency treatment of a person in custody. We believe your question essentially asks whether the authority in custody of a person under arrest or incarcerated must guarantee payment to a provider of medical care who refuses to perform medical services without payment in advance of rendering such services. You do not ask, nor do we opine, concerning who is ultimately responsible for payment to the provider of medical services.
The principles of constitutional law upon which we relied in response to your first question are applicable to your second question. Clearly, the duty to provide medical care to a person in custody requires that the custodial authority take all steps necessary to obtain needed care. See, Massachusetts GeneralHospital v. City of Revere, supra; Lutheran Medical Center ofOmaha v. City of Omaha, supra; Bartron Clinic v. Kallemeyn, supra.
Thus, it is our opinion that the authority maintaining custody of a person is responsible for initial payment when such payment is required prior to necessary medical care being provided.
Your third question asks what duty an ambulance service has to transport a prisoner when the prisoner's condition is non-life threatening and no payment can be expected or the custodial agency refuses to send an officer with the prisoner in the ambulance. We believe your question can be stated another way: May an ambulance service refuse to transport a prisoner, whose condition is not life threatening, because (a) no payment can be expected or (b) the custodial agency refuses to send an officer to accompany the prisoner?
Chapter 190, RSMo 1978, relates specifically to emergency services, including ambulance districts, ambulances, ambulance personnel, and emergency treatment. In that chapter, the General Assembly established a comprehensive system of licensing emergency services in Missouri. Chapter 190 does not impose a statutory duty to transport persons or prisoners upon emergency services licensees. Our review of Missouri appellate decisions discloses no rulings which impose such a duty.
Your third question clearly contemplates non-emergency transportation of prisoners. We therefore limit our response to that limited fact situation.
Because we find no statutory, constitutional or common-law duty which requires an ambulance service to transport prisoners whose illness is not life threatening, we believe that an ambulance service may refuse to provide such non-emergency transportation.
Your fourth question asks who is responsible for damages in the event a prisoner who is being transported by an ambulance without a guard becomes violent and injures an ambulance crew member or himself. It is our view that this question is much too speculative to permit an adequate answer. We therefore respectfully decline to answer your fourth question.
CONCLUSION
It is the opinion of this office that cities or counties must provide necessary medical care for persons in their legal custody. Such cities and counties are responsible for the initial payment for necessary medical services when such payment is required prior to medical care being provided. Ambulance services are not required to furnish prisoners non-emergency transportation.
Very truly yours,
 JOHN ASHCROFT Attorney General