## DUNDALK LIQUOR COMPANY *v.* TAWES, COMPTROLLER, ET AL.

[No. 117, October Term, 1950.]

*Decided March 16, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*Harrison L. Winter, Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for J. Millard Tawes and Roger V. Laynor.

*I. William Schimmel*, with whom was *William C. Walsh* on the brief, for the intervenors.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree sustaining demurrers to appellant's substituted bill of complaint, without leave to amend, and dismissing that bill with costs.

The bill of complaint alleges that the appellant, complainant, a Maryland corporation, notified the Comptroller of the Treasury, one of the appellees and respondents, "that it was in a position to handle for sale to certain retailers a number of new varieties of beverages, which it proposed to sell at the price as submitted". Submitted was a list containing a brand of brandy and brands of wines with the proposed sale price. "4. That said Respondents, upon receipt of the notification aforesaid, advised the Complainant that the prices indicated could not be published and charged as above set forth by reason of the fact that it was claimed that the prices requested were less than the prices established for other makes and brands of comparable merchandise and that said items could and would be listed only at the so called prevailing prices established as hereinafter set forth. 5. That, notwithstanding the protests of the officials of the Complainant Company, the Defendants and their representatives were adamant in refusing to publish the prices requested, and so advised the Complainant by long distance telephone; whereupon the Complainant's spokesman, while again asserting the illegality and invalidity of the position of said Respondents, admitted its helplessness in the situation, being, as a licensee, subject to the Regulation of said Respondents in the matter, pending such time as the intervention of the Courts might be secured. 6. That thereafter, the Comptroller's office did, in fact, publish the items listed with prices given therefor at the figures fixed by said Respondents, each change calling for a higher price than that at which the Complainant has been willing to sell the products at a reasonable profit to itself, its original prices having al-

lowed a profit of approximately double the general statutory minimum. 7. That the Complainant is advised that the publication of said higher prices has been based upon said regulations promulgated by the Comptroller of the Treasury known as Regulation 206, and in accordance with official instructions published in connection with said regulation, and, more specifically, in connection with instruction No. 17, reading as follows: 'A new item cannot be established at a lower price than the current base price filed by other manufacturers and wholesalers with respect to the same size of a similar case, formula or character of item.' 8. That said regulation was promulgated and published by the Comptroller after consultation with certain wholesalers and distributors of alcoholic beverages within the State of Maryland who advocated the same and urged its adoption.

"9. That the Complainant is advised, and, therefore, alleges, that said regulation, as amplified by said instruction, is beyond the authority conferred upon said Respondents, is arbitrary, unreasonable, and void; and, further, that it has a direct tendency to stifle competition and to deprive the Complainant and others similarly of their constitutional right to pursue their legitimate business in a lawful way. 10. That a copy of the letter of your Complainant of March 21, a copy of the price list issued by the Respondents, and a copy of the instructions promulgated by said Respondents are all filed herewith and prayed to be taken as a part hereof as fully as if incorporated herein, being marked Complainant's Exhibits A, B and C. 11. That the Complainant has a large investment in its business and has on hand substantial quantities of material which it is unable to use to full advantage and has also outstanding offers of merchandise of high quality which, in the absence of the arbitrary regulations above mentioned, it could market at a very handsome profit at a price substantially below that demanded to be fixed by the said Respondents; and that as a result of these arbitrary and unlawful restrictions, the Complainant is deprived of its freedom of contract,

deprived of its right to engage in free competition, and has been caused great and irreparable loss and damage. 12. That the only tangible result of the regulation aforesaid, in addition to the evils above described, is to favor wholesalers of established and nationally advertised products with the result that the general public is compelled to pay higher prices at the consumer's level."

The bill asked that the regulation aforesaid be vacated as unreasonable, unlawful and void; that a preliminary injunction be issued against the Respondents; and for other and further relief. To that bill the appellees demurred on the grounds that the bill was bad in substance and insufficient in law and further: "That Regulation 206 of the Respondents is a fully valid regulation within the statutory power of the Respondents, was duly adopted in accordance with the law and is a valid, subsisting regulation governing the conduct of the Complainant's business."

Regulation 206, *supra*, contains several sections. The first section governs the amount of discount allowed and is not in controversy here. The acts done by the Comptroller, as alleged in the declaration and admitted by the demurrers, concern other sections of that Regulation. In addition to the authority given the Comptroller by that Regulation as set out in the bill of complaint, it is provided therein as summarized in appellees' brief: "Prices may be reduced in the following manner: Notice thereof must be filed with the Comptroller by registered mail not later than the 5th day of the current month, to become effective the 1st day of the subsequent month. Upon receipt of such a notice, the Comptroller then sends notices to all licensees selling to county dispensaries or retail dealers not later than the 12th day of the current month, advising them of the proposed decrease. The licensees receiving such a notice from the Comptroller have the right to reduce the price of one or more competitive items of the same kind or character in a like amount by notifying the Comptroller by registered mail not later than the 20th day of the current month, and upon

receiving a written acknowledgment from the Comptroller. The price reduction initiated by a licensee and price reductions on competing items all become effective on the 1st day of the month subsequent to that in which the original action to reduce a price is undertaken. Regulation 206 recognizes that in certain extraordinary circumstances, a price reduction must be accomplished on less than the notice required as set forth above. Accordingly, Regulation 206 permits a price reduction on five days notice at any time by a licensee upon receipt by the Comptroller of a statement under oath setting forth the quantity, size, formula and brand of item, with established base price, cost price and distress price, the name of the wholesaler handling such item or items, and the fact that the wholesaler has been offered and declined to purchase such item or items at net cost to the seller, together with a further statement that the items will be disposed of within thirty days from the date of authorization and will not be sold or purchased for the six months period subsequent thereto."

The appellee contends that the authority of the Comptroller to issue Regulation 206, *supra,* is given by Sections 94, 157, and 158 of Article 2B (1947 Supplement of the Code). Those Sections follow: "94. Distribution of Alcoholic Beverages. *In order to eliminate the undue stimulation of the sale of alcoholic beverages and the practice of manufacturers and wholesalers in granting secret discounts, rebates, allowances, free goods or other inducement to selected licensees which contribute to a disorderly distribution of alcoholic beverages,* it shall be unlawful for any person licensed hereunder as a manufacturer or wholesaler to discriminate directly or indirectly in price, discounts or the quality of merchandise sold, between one dispensary and another dispensary, between one wholesaler and another wholesaler or between one retailer and another retailer purchasing alcoholic beverages bearing the same brand and trade name and of like age and quality. It shall be unlawful for any non-resident dealer or non-resident unlicensed manu-

facturer to use or promote the use of any such practices for the sale or distribution of alcoholic beverages to or through the manufacturers, wholesalers or county dispensaries in this State. This section shall not restrict a manufacturer or wholesaler or non-resident dealer from limiting the quantity of alcoholic beverages to be sold to any licensee under a voluntary or compulsory plan of ration and the word 'purchase' shall not imply that a manufacturer, wholesaler or non-resident dealer shall be required to sell all licensees from whom they receive orders. The Comptroller may promulgate such rules and regulations as are necessary to carry out the purpose of this section. (Italics supplied).

"157. Rules and Regulations. In addition to the powers otherwise provided by this Article, the Comptroller, the Board of License Commissioners from any County or Baltimore City, or the State Appeal Board shall, respectively, have full power and authority to adopt such reasonable rules and regulations as they may deem necessary to enable them effectively to discharge the duties imposed upon them by this Article.

"158. Comptroller. The Comptroller is hereby directed and empowered to make, amend, alter and publish rules and regulations for the proper enforcement of his duties under this Article. He is authorized to adopt rules and regulations in regard to labeling and advertising similar to those adopted by the Federal Alcohol Administration, credit sales, records to be kept by licensees and others engaged in the business, and such other subjects as may be deemed necessary for the proper administration of his duties under this Article; provided such rules and regulations in regard to labeling of beer shall not apply to any label advertised and/or in use as of March 1, 1939. Any violation of any rule or regulation adopted hereunder, shall be ground for revocation or suspension of license, and the offender shall be subject to the penalties prescribed by Section 170 of this Article."

The appellees base their argument primarily upon the italicized portion of Section 94, *supra,* and contend that Regulation 206 clearly falls within the power thereby delegated and is within the spirit and intent of direct legislative enactment contained in Article 2B, *supra.* They claim that the purpose of this regulation, by requiring the public record of prices at which sales may be made, is that the Comptroller should always have at his disposal current market prices to determine whether a sale was made in a lawful manner. They contend that sales will be stimulated by price-cutting because if the level of prices is low, consumption will be greater and by postponing the effective date of any price cut the seller is prevented from offering a purchaser a temporary market advantage which might result in a price war such as to unduly stimulate the sale of alcoholic beverages, contrary to the plain intent of Section 94, *supra.* If a retailer is given such a price advantage, appellee contends that large quantities will be purchased and in order to dispose of such quantities, sales may be made to minors, after hours, and on prohibited days, and through sitters to encourage the consumption of alcoholic beverages and that Regulation 206 prevents the retailer from being subject to such pressure.

As contended by the appellee, of course under the decisions in this State, the Legislature can control, regulate and prohibit the sale of alcoholic beverages in the exercise of the police powers. *Miller v. State,* 174 Md. 362, 371, 198 A. 710; *Federico v. Bratten,* 181 Md. 507, 510, 30 A. 2d 776; *Cromwell v. Jackson,* 188 Md. 8, 24, 25, 52 A. 2d 79. Whether the Legislature has the power to delegate price fixing authority over the sale of alcoholic beverages, it is not necessary that we decide in this case. See *Levine v. O'Connell,* 275 App. Div. 217, 88 N. Y. S. 2d 672, affirmed Feb. 23, 1950, 300 N. Y. 658, 91 N. E. 2d 322; *Schwegmann Bros. v. Louisiana Board, etc.,* 1949, 216 La. 148, 43 So. 2d 248; *Schechter Poultry Corp. v. United States,* 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed.

1570, 97 A. L. R. 947; *Maryland Co-Operative Milk Producers v. Miller,* 170 Md. 81, 182 A. 432.

The narrow question before us in this case is whether the Legislature under the provisions of Sections 94, 157 and 158 of Article (2B) *supra,* has attempted to delegate to the Comptroller authority to set minimum prices on alcoholic beverages for a period of twenty-five days, which is the time required under Regulation 206, *supra,* to reduce prices. Section 94, *supra,* plainly forbids discrimination between one customer and another by a single wholesaler or manufacturer and thereby confers power to fix prices vertically. It is very similar to the so-called Robinson-Patman Act, U. S. C. A. Tit. 15, Section 13, which seeks to prevent discrimination between purchasers of like grades and qualities from the same manufacturer or wholesaler. *Federal Trade Commission v. Morton Salt Co.,* 334 U. S. .37, 68 S. Ct. 822, 92 L. Ed. 1196.

An examination of Sections 94, 157 and 158, *supra,* enacted by the Legislature fails to show any such delegated authority. There are no words therein which authorize such horizontal price fixing. If the Legislature had so intended, it would have been just as simple to use words which would have authorized horizontal price fixing as the words used therein seek to authorize vertical price fixing. As stated in *Rogan v. Baltimore & O. R. R. Co.,* 188 Md. 44, 54, 52 A. 2d 261, even though a certain provision which has been omitted from a statute, appears obviously to be within the purpose of the statute and to have been inadvertently omitted, which we do not find here, the courts have no authority to add that language. We must hold that the Legislature intended to omit that provision. If it was omitted because not foreseen or contemplated we, having no legislative power, cannot supply the omission. We cannot say here that the omitted language "falls so clearly within the reasons of the enactment" that the Legislature omitted that language "only because it was deemed unnecessary" to include it. Of course a statute should be construed accord-

ing to the ordinary and natural import of the language used, unless a different meaning is clearly indicated by its context, without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. *Barrett v. Clark*, 189 Md. 116, 123, 54 A. 2d 128, 173 A. L. R. 988. Obviously to absolutely forbid the sale of alcoholic beverages would "eliminate the undue stimulation of the sale of alcoholic beverages and the practice of manufacturers and wholesalers in granting secret discounts, rebates, allowances, free goods or other inducement to selected licensees which contribute to disorderly distribution of alcoholic beverages." It could certainly not be seriously contended that under the provisions of the sections relied on by the appellees the Comptroller without specific legislative authority could absolutely forbid the sale of alcoholic beverages. According to the allegations of the bill now before us, this price fixing in effect makes the sale of certain alcoholic beverages impossible for a period of twenty-five days.

As to the rule making authority given under Sections 157 and 158, *supra,* the case of *Maryland Theatrical Corporation v. Brennan,* 180 Md. 377, 24 A. 2d 911, is helpful on the question here presented. In that case a statute prohibited public dances in Baltimore unless a license fee of not less than $5 nor more than $100 be paid to the Secretary of the Police Commission. This Court there held the statute to be a revenue measure, but in view of the wide latitude permitted in the amount of the fee to be paid, it gave the Police Commissioner the right to determine whether or not a permit should be issued and therefore was a regulatory measure. It was said in that case, 180 Md. at pages 383 and 384, 24 A. 2d at page 915, in holding the statute void: "The usual rule with respect to delegations of the police power to administrative officials is that they must be surrounded with such safeguards that the official cannot arbitrarily, at his own will and pleasure, determine whether or not certain businesses or amusements can operate. There have been a number of cases before this court in which

such grants of power have been held void because of their arbitrary nature. They are collected in the case of *County Commissioners v. Northwest Cemetery Co.*, 160 Md. 653, 154 A. 452, 453. In that case the Act was one which conferred upon the County Commissioners of Prince George's County, what the courts said was 'a wholly unregulated discretion to allow or to prevent the establishment or maintenance of a cemetery anywhere in Prince George's County.' The Act in that case was held void."

We cannot say in the case now before this Court that the Legislature from the language used intended by Sections 157 and 158, *supra,* to give the Comptroller the broad power to set the minimum price of alcoholic beverages on a horizontal level for the period of twenty-five days. See *Panama Refining Co. v. Ryan,* 293 U. S. 388, 420, 428, 430, 55 S. Ct. 241, 79 L. Ed. 446. In *Federico v. Bratten, supra,* it was held that a rule adopted by the State License Bureau prohibiting the issuance of a liquor license within 300 feet of a church or school was a prohibition and not a regulation and therefore invalid under a statute regulating sale. See also *Maryland Co-Op. Milk Producers v. Miller, supra,* 170 Md. 89, 182 A. 432. The demurrers should be overruled.

*Decree reversed, with costs.*