## CHILLUM-ADELPHI VOLUNTEER FIRE DEPART-MENT, INC. ET AL. v. PRINCE GEORGE'S COUNTY, MARYLAND

[No. 324, September Term, 1972.]

*Decided July 9, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William L. Kaplan,* with whom were *Feissner, Kaplan, Smith, Joseph & Greenwald* on the brief, for appellants.

*Nelson M. Oneglia, Associate County Attorney,* with whom was *Joseph S. Casula, County Attorney,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

Four suits for declaratory decrees were filed in the Circuit Court for Prince George's County, in equity. They were consolidated for hearing in the lower court and are before us on appeal and cross-appeal from a final order passed by the chancellor (McCullough, J.) on November 3, 1972. The declaratory relief sought concerned the legality, construction and effect of various provisions of the Code of Public Local Laws of Prince George's County, Resolutions of the Board of County Commissioners for Prince George's County and provisions of the Prince George's County Charter as they related to the Volunteer Fire Departments in the county and some of their officials and members. Three of the suits were filed against the Board of County Commissioners for Prince George's County prior to February 8, 1971, the effective date of the Prince George's County Charter, *i.e.,* Equity No. D-3996 by Ronald E. Randolph on October 2, 1969; Equity No. D-4153 by James F. Dorsey on December 30, 1969; and Equity No. D-4244 by Chillum-Adelphi Volunteer Fire Department, Inc. et al. on February 18, 1970. The fourth suit, Equity No. D-6439, was filed against Prince George's County (the County) by Allentown Volunteer Fire Department, Inc. et al. on October 19, 1971. Various other Volunteer Fire Departments in Prince George's County were allowed to intervene in Equity No. D-4244 and on April 29, 1970, all of the remaining 37 Volunteer Fire Departments in Prince George's County were

joined as additional parties defendants in Equity D-4244 upon the motion of the defendant, Board of County Commissioners for Prince George's County. After a pre-trial conference on December 3, 1971, the parties formulated some 22 issues of law for a declaration by the chancellor and these were incorporated in a pre-trial order.

Hearings were held on December 20 and 21, 1971, and on February 10 and March 3, 1972. The chancellor thereafter on April 14, 1972, issued his opinion and order making certain declarations, but indicating that, in regard to other issues, additional testimony was necessary. Further hearings were held on June 1, June 26 and September 21, 1972, after which the chancellor issued his final opinion and order of November 3, 1972, making his order of April 14, 1972, final.

The chancellor declared that the legal and beneficial interest in the assets of the Volunteer Fire Departments is in the respective volunteer fire companies and that these assets are not held by those companies upon any express, implied or charitable trust for the County. The chancellor, in reaching this decision, relied upon our decision in *Mayor & Aldermen of the City of Annapolis v. West Annapolis Fire and Improvement Company*, 264 Md. 729, 288 A. 2d 151 (1972). We agree generally with the chancellor's conclusion in this regard.

The chancellor, however, was further of the opinion, and so declared, that the proper construction of Chapter 628 of the Laws of Maryland, 1963 — Section 32-17 of the Code of Public Local Laws of Prince George's County — applied only to volunteer fire companies organized under the Laws of Prince George's County subsequent to the effective date of Chapter 628, *i.e.*, June 1, 1963. He concluded that the assets of the volunteer fire companies incorporated prior to that date (all of such companies before the lower court) were not affected by the provisions of that statute.

Section 32-17 provides:

"Sec. 32-17. *Nonprofit fire companies and rescue squads.*
"(a) *Instrumentalities of county.* All existing

nonprofit incorporated volunteer fire companies and/or rescue squads operating in Prince George's County are hereby declared to be an instrumentality of Prince George's County and/or the municipality in which they operate for the protection of life and property from the hazards of fires, explosions and related perils.

"(b) *Income to be public.* No income of such existing nonprofit incorporated volunteer fire companies and/or rescue squads shall inure to any private person.

"(c) *Assets.* The beneficial interest in any assets, real or personal, held by such existing nonprofit incorporated volunteer fire companies and/or rescue squads shall be vested in Prince George's County or the municipality wherein such volunteer fire companies and/or rescue squads are located and operating, which said county or municipality shall be vested with full legal ownership of all such assets upon the retirement of all indebtedness of such volunteer fire companies and/or rescue squads.

"(d) *Dissolution.* In the event of dissolution or liquidation of such incorporated fire companies and/or rescue squads, title to all assets, real or personal, held by it, shall revert to and vest in Prince George's County or the municipality in which the fire companies or rescue squads are located.

"(e) *Application.* The provisions of this section shall apply to all volunteer fire companies and/or rescue squads hereinafter organized under the laws of Prince George's County."

The volunteer fire companies successfully contended before the chancellor that the entire application of the statute was limited by subsection (e) to volunteer fire companies and rescue squads "hereinafter organized" so that the provisions of subsection (c) in regard to assets did not

apply to the plaintiffs — all organized prior to June 1, 1963. The County, however, contended that the words of subsections (a), (b) and (c) themselves, "All *existing* nonprofit incorporated volunteer fire companies" and "held by *such existing* nonprofit incorporated volunteer fire companies" (emphasis supplied), clearly indicated that it was intended that subsections (a), (b) and (c) applied to those volunteer fire companies incorporated and "existing" prior to June 1, 1963. The County argued that subsection (e) was intended to indicate that the provisions of the statute were applicable to volunteer fire companies and rescue squads organized after that date, without any intention to limit or modify the provisions of subsections (a), (b) and (c) in regard to "existing" volunteer fire companies and rescue squads. By limiting the application of the statute to volunteer fire companies and rescue squads organized after the effective date of the statute, it was unnecessary for the chancellor to decide the constitutional issues inevitably arising if the statute was construed in the manner urged by the County. Does Section 32-17 represent an attempt to take the property of the existing incorporated volunteer fire companies for public use without the payment of just compensation as forbidden by Article III, Section 40 of the Maryland Constitution, or a denial of due process of law as provided for in Article 23 of the Declaration of Rights of the Maryland Constitution and in Section 1 of the Fourteenth Amendment to the Federal Constitution?

Alas, we are of the opinion that it was the legislative intent of Section 32-17 to apply subsections (a), (b), (c) and (d) to the volunteer fire companies and rescue squads existing when the Act became effective so that the constitutional issues are raised and must be decided in the present case. Our review of the rather substantial record in the present case does not, in our opinion, furnish us with sufficient factual data to reach a definitive and satisfactory resolution of the important constitutional issues. We have reluctantly concluded that the better course of action under these rather unusual circumstances is to remand the case, without affirmance or reversal, pursuant to the provisions

of Maryland Rule 871 a, so that the chancellor may take additional testimony and decide and declare whether or not, and to what extent, Section 32-17, as construed by us, may be unconstitutional. Of course, the chancellor may take any additional testimony he or the parties may deem necessary to clarify or augment a proper resolution of the other issues in the case. We have indicated in the past that we will not decide important constitutional questions on a meager or inconclusive record. *A & H Transp. Inc. v. Mayor & City Council of Baltimore,* 249 Md. 518, 531, 240 A. 2d 601, 607-608 (1968). *See also State's Attorney v. Triplett,* 255 Md. 270, 285-86, 257 A. 2d 748, 755-56 (1969).

We have also concluded that we should state our reasons for our disagreement with the chancellor's construction of Section 32-17, as being applicable only to companies organized subsequent to the effective date of Chapter 628. In construing statutes, we seek to ascertain the legislative intent by the ordinary meaning of the words used by the legislative body in the statute. If these words are clear and unambiguous, our search for the legislative intent is concluded. Only if the words are ambiguous, do we resort to the established rules of statutory construction. *Scoville Service, Inc. v. Comptroller of the Treasury,* 269 Md. 390, 306 A. 2d 534, and cases cited in that opinion.

In our opinion, there is no ambiguity in the words used in Section 32-17. The "existing" volunteer fire companies are obviously those in existence when the statute became effective. There is no ambiguity in the language of subsection (e) — "*shall apply* to all volunteer fire companies . . . *hereinafter organized* . . . .*"* (emphasis supplied) Subsections (a), (b), (c) and (d) were provisions applicable to "All existing nonprofit incorporated volunteer fire companies" and "such existing . . . companies." The language of subsection (e) was inserted to make it clear that the provisions of subsections (a), (b), (c) and (d), in regard to existing incorporated companies, should also apply to all volunteer fire companies "hereinafter organized." Without this provision in subsection (e), it could be argued that the prior provisions were limited to existing companies and

would not be applicable to those later organized. If the General Assembly had intended that the language of subsection (e) was to limit, or indeed make ineffective, the language "All existing" in subsections (a), (b), (c) and (d), it would have added the word "only" between the words "shall" and "apply" to accomplish this rather extraordinary result. No such word is there. We perceive no ambiguity. The legislative intent was to make "All existing nonprofit incorporated volunteer fire companies" operating in the County "instrumentalities" of the County and to vest any interest of those companies in any of their assets held by them in the County. As we have indicated, grave constitutional questions arise in regard to whether and to what extent this may be accomplished by legislative fiat. Hence, the remand for further consideration.

We note in the record that at least one incorporated volunteer fire company signed an agreement to *give* the County "an equitable interest" in the property of the company for payment by the County of a sum certain towards the outstanding indebtedness of the company. Other companies have apparently declined to execute such an agreement. Upon remand, this situation is obviously one to be considered by the chancellor with regard to the constitutional issues involving the specific property.

The chancellor will also wish to consider whether the County has such a large proportion of beneficial interest in the assets of any particular company and such control over operations, that the company may have become, by its own conduct and operation, a complete instrumentality of the County. It could well be that with assets and control so vested in the County, there would be no unconstitutional taking of property or denial of due process of law. *Compare Kerr v. Enoch Pratt Free Library of Baltimore City,* 149 F. 2d 212 (1945) where the United States Court of Appeals for the Fourth Circuit held that the State, through its municipality, had contributed so much towards the continued existence of the Enoch Pratt Library that the library became a State instrumentality. In view of the holding of the chancellor (which we generally approve) that

the legal and beneficial interest in the assets of the volunteer fire companies is in them, following and applying our holding in *West Annapolis Fire & Improvement Co., supra,* the situation in the *Enoch Pratt* case is not likely to be present, but this possibility, as we have stated, should be explored by the chancellor upon the remand.

The chancellor in the instant case also declared that the County was not empowered to inspect and audit the books of the plaintiff fire companies, concerning non-budgeted County funds, but was limited to an audit of the receipts and disbursements of County-budgeted funds. Without deciding this matter generally, it may well be that in obtaining data necessary to determine the constitutional issues presented, the chancellor may find it necessary or desirable to obtain facts in regard to the non-budgeted receipts or disbursements by means of an independent audit or otherwise. We leave this aspect of the matter to the discretion of the chancellor upon the remand.

> *Case remanded without affirmance or reversal pursuant to Rule 871 a for further proceedings in accordance with this opinion, the costs to be paid by the appellee and cross-appellant, Prince George's County.*