# STEWART *v.* STATE OF MARYLAND

[No. 111, September Term, 1974.]

*Decided June 25, 1975.*

The cause was argued on January 13, 1975, before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ., and

reargued on May 13, 1975, before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

Argued and reargued by *Arthur D. Condon, Assigned Public Defender,* for appellant.

Argued and reargued by *Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court. SMITH, DIGGES and ELDRIDGE, JJ., dissent and ELDRIDGE, J., filed a dissenting opinion in which SMITH and DIGGES, JJ., concur at page 275 *infra.*

This case involves the question of where venue may lie for the trial of the crime of escape under Maryland Code (1957, 1971 Repl. Vol. [1974 Cum. Supp.]) Art. 27, § 139.

The evidence presented by the prosecution tended to show the following: On October 9, 1969, the petitioner Brenda Stewart was committed to the custody of the Maryland Correctional Institution for Women, located in Anne Arundel County, to serve two sentences imposed by the Criminal Court of Baltimore — one, a three-year term on a charge of burglary and the other a one-year consecutive term. On February 16 of that year, in company with two other inmates, she was transported in the custody of two correctional officers to University Hospital in Baltimore City for medical treatment. While there, waiting to see a nurse, she received permission from the correctional officer in whose custody she was, to "go to the bathroom." After an interval of several minutes the petitioner did not return; when the nurse called out her name, the correctional officer searched the bathroom only to discover that the petitioner was nowhere to be found. At large for more than three years, she was returned to the Institution for Women on May 14, 1973.

Subsequently a criminal information was filed in the Circuit Court for Anne Arundel County charging Brenda Stewart with the crime of escape in violation of Art. 27, §

139. Prior to her trial, and before entering a plea, the petitioner's attorney objected to venue in Anne Arundel County and argued that since she had escaped while actually at the University Hospital, the proceedings should have been instituted in Baltimore City. In connection with her motion challenging "venue" it was stipulated that "the actual place from which she left the jurisdiction of the proper authorities would be in Baltimore City." Nonetheless, the prosecution argued that the petitioner was legally confined at the Maryland Correctional Institution for Women, located in Anne Arundel County, and proper venue was in that court. The trial judge (Heise, J.) denied the motion based on improper venue.

Following a non-jury trial, during which her counsel reiterated his objection to the prosecution being laid in Anne Arundel County, Brenda Stewart was found guilty and sentenced to a term of eighteen months consecutive to the sentence she was serving when she escaped, in accordance with the mandate of Art. 27, § 139, as amended by Ch. 121 of the Acts of 1972.

The Court of Special Appeals affirmed the petitioner's conviction, holding that under the provisions of Art. 27, § 139, and the facts of this case, "venue lies both in Baltimore City, where the departure actually occurred, and in Anne Arundel County, where the crime constructively took place." *Stewart v. State*, 21 Md. App. 346, 348, 319 A. 2d 621, 622 (1974). Since this Court had not previously dealt directly with the venue question presented, and because of the recurring nature of the issue, in the light of the number of trials which take place upon the charge of escape, we granted certiorari.

The first paragraph of Art. 27, § 139 creating the offense, as it read at the time of the petitioner's departure from University Hospital, provided as follows:

"If any offender or person legally detained and confined in the penitentiary, or jail, or house of correction, or reformatory, or station house, or any other *place of confinement*, in this State, shall

escape he shall be guilty of a felony and on conviction thereof by the Criminal Court of Baltimore City or by the circuit court of the county *in which the escape takes place,* be sentenced to confinement in the penitentiary, jail or house of correction for such additional period, not exceeding ten years, as the court may adjudge. However, for escapes from the Maryland Correctional Institution-Hagerstown or the Maryland Correctional Training Center-Hagerstown which have not involved an assault, the sentence shall not exceed confinement for three years." (Emphasis supplied.)

Historically, the progenitor of § 139 was enacted as § 32 of Ch. 138 of the Acts of 1809, entitled "An Act Concerning Crimes and Punishments." The offense was limited to those "sentenced to undergoing confinement in the penitentiary." Venue over the offense was vested in the Court of Oyer and Terminer and Gaol Delivery for Baltimore County. By the Acts of 1837, Ch. 320, § 18, limitation of the crime of escape to "any offender sentenced to undergoing confinement in the Penitentiary" was retained, the statute, however, providing as amended that one so adjudged guilty might be subjected to "such additional confinement and hard labour" as the Baltimore City Court shall adjudge and direct.[1] Following the construction of the House of Correction and the Reformatory the statute was materially changed and reenacted by Ch. 374 of the Acts of 1927 which, for the first time, made the offense of "escape" applicable not only to those confined in the Penitentiary, but to those detained and confined in the "Jail, or House of Correction, or Reformatory, or Station House, or any other place of confinement." It was upon this broadening of the scope of the offense that the provision was then inserted that "on conviction thereof by the Criminal Court of Baltimore or by

---

1. The penitentiary was located in Baltimore City when it was the county seat of Baltimore County. Baltimore City later became a separate political subdivision of the State.

the Circuit Court of the County *in which the escape takes place*," the offender shall "be sentenced to confinement for not more than ten years in the Penitentiary, or Jail, or House of Correction as the Court may adjudge." By Ch. 157 of the Acts of 1963 the Legislature limited the punishment on escapes from the Reformatory for Males. For a review of the history of the statute *see Fabian v. State*, 3 Md. App. 270, 276-78, 239 A. 2d 100, 105-06 (1968). *See also Beasley v. State*, 17 Md. App. 7, 299 A. 2d 482, *cert. denied*, 268 Md. 745 (1973).

Thus, after a recitation of various "places of confinement," the statute — in the very same sentence — provides that the offense be tried either in the City of Baltimore or in the circuit court of the county "in which the escape takes place." This use of the phrase, within the same sentence, designating "places of confinement," as we construe it, provides that venue rests geographically in that area where the "place of confinement" is located. This view is strengthened by the language of the last sentence included in the paragraph placing a limitation upon the punishment for escape *from* the two correctional institutions located at Hagerstown, Maryland Correctional Institution and Maryland Correctional Training Center, "descendants" of the former Reformatory for Males.

Since a statute should be construed according to the ordinary and natural import of the language used, unless a different meaning is clearly indicated by its context, without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation, the use of the clause "on conviction thereof by the Criminal Court of Baltimore City or by the circuit court of the county in which the escape takes place" makes use of relative and qualifying language which must be applied to the phrases immediately preceding it — designating places of confinement — and thus cannot be construed as limiting venue to the place where the prisoner physically happens to have been when he eloped. *See* 82 C.J.S. *Statutes* § 334 (1953). *Compare Webb v. Mayor & City Council*, 179 Md. 407, 19 A. 2d 704 (1941).

In connection with fixing venue at the "place of

confinement," it is interesting to observe that under the provisions of Art. 27, § 725, as it read at the time of the petitioner's departure, it was provided that escapes by prisoners working upon the roads (under the provisions of §§ 719 to 726) were misdemeanors punishable by confinement for an additional term not to exceed one-half of the entire term for which the prisoner had been sentenced prior to escape, or in the discretion of the court, subjecting him to any penalties which may be by law provided for prisoners escaping *"from the institution to which he had previously been committed."* Although that statute was repealed by Ch. 121, § 1 of the Acts of 1972, as to the penalty therein provided, and escapees were thus brought within the purview of Art. 27, § 139, the language formerly used in § 725 lends congruity by the Legislature to the interpretation that venue certainly coincides with the "place of confinement." Similarly, Art. 27, § 700A (c), provides that if any prisoner, released from actual confinement to a "work release" plan shall willfully *fail to return to the place of confinement* at the time specified in such plan he shall be guilty of a misdemeanor and be subject to the penalties of Art. 27, § 139. Those, too, who have been granted "compassionate leave" under the provisions of Art. 27, § 700B (f), are considered to violate the provisions of § 139 upon their failure to comply with the terms of their authorization for leave. It would thus seem to be within the legislative scheme of things to fix the gravamen of the offense under these statutes to the failure of the prisoner to return to his "place of confinement," while temporarily outside the confines of the institution to which he has been committed when working upon the roads, or in a "work release" plan, or upon a grant of "compassionate leave." The same logic would seem to apply to one who, like the petitioner here, was temporarily absent from the Maryland Correctional Institution for Women — her "place of confinement" — when she was taken to the University Hospital for medical treatment and then escaped.

While it is true that since 1967 judges in sentencing convicted persons no longer commit them to any designated

institution but rather commit them to "the custody of the Commissioner of Correction," Art. 27, § 690 (b), the correctional and reformatory institutions under the Department of Correction are designated in Art. 27, § 689, as, "the Maryland Penitentiary, the Maryland House of Correction, the Maryland Correctional Institution-Hagerstown, the Maryland Correctional Training Center-Hagerstown, the Maryland Correctional Institution for Women-Jessup, the Maryland Correctional Camp Center, at Jessup," other "correctional camps as established from time to time elsewhere in the state," "receiving and classification centers located at either one of the enumerated institutions or elsewhere," and as provided by Ch. 82 of the Laws of 1973, "any community correction center established and maintained as set forth in Art. 27, § 706. As a matter of practice, upon a sentence to the custody of the Commissioner of Correction such prisoners are — generally — in the first instance delivered to the Reception, Diagnostic and Classification Center located in a portion of the Maryland Penitentiary whence they are, by warrants of commitment, ordered transferred and confined by the Commissioner of Correction to a designated "place of confinement." [2] Hence, no problem is presented in ascertaining "the county of 'constructive departure' " in that the *situs* of the inmate's "place of confinement" is specifically fixed.

In *Johnson v. Warden*, 196 Md. 672, 75 A. 2d 843 (1950), the appellant initially sentenced to the House of Correction had been transferred to the Reformatory for Males and was sentenced in the Circuit Court for Washington County to a consecutive term for escape from the Reformatory. In an application for leave to appeal a denial of habeas corpus the appellant challenged the legality of his conviction asserting that he was not subject to the statute in that he was not confined in the Reformatory at the time of his escape but

---

2. As we understand it, sentenced female prisoners are transferred directly to the Correctional Institution for Women without being processed through the Reception, Diagnostic and Classification Center.

had been assigned, without the supervision of any guard, to work on a private farm from which he had departed.

In rejecting this contention Chief Judge Marbury for the Court, stated:

> "There can be no doubt that the applicant was legally confined *in the Reformatory* at the time of his escape. The mere fact that he was allowed to work outside on a farm in the daytime does not change the nature of his detention or confinement, and escape from the farm had no legal significance different from an escape *from the Reformatory* itself." (Emphasis supplied.) 196 Md. at 674, 75 A. 2d at 844.

In *Taylor v. State*, 229 Md. 128, 182 A. 2d 52 (1962), the appellant, after serving 19 months on a three-year sentence at the House of Correction was transferred to the Sandy Point Correctional Camp. While on a work detail from the Camp at the University Hospital in Baltimore he escaped. When he was arraigned in the Criminal Court of Baltimore upon a charge of escape "from the House of Correction," he pleaded guilty. On appeal, in addition to challenging the voluntariness of his plea, he contended that he could not be guilty of the offense proscribed in § 139 since he was not confined at the House of Correction at the time of his escape.

In rejecting this contention Chief Judge Brune, for this Court, stated:

> "The exact relationship between the Correctional Camps (including the one at Sandy Point) and the House of Correction is not shown by the record or briefs before us, nor is it shown (so far as we can discover) by any statute. No statute treats them as separate places of confinement, as the statutes do treat the Penitentiary, the House of Correction, the Reformatory for Males and other institutions. It would appear that the Sandy Point Correctional Camp was merely an adjunct of the House of Correction.[1] ["1. We are informed that as an

administrative matter all prisoners assigned to Correctional Camps have been originally committed to the House of Correction or have been transferred to it from other institutions before being classified and assigned to such camps and that they continue to be carried on the rolls of the House of Correction while assigned to such camps."] We therefore think that the prisoner *continued to be under confinement at that institution* and escape therefrom would, therefore, constitute escape from the House of Correction. *Johnson v. Warden*, 196 Md. 672, 75 A. 2d 843. . . ." (Emphasis supplied.) 229 Md. at 130, 182 A. 2d at 53. (Footnote in original.)

A case virtually identical to the facts here is *Best v. Warden*, 235 Md. 633, 201 A. 2d 490 (1964), in which Best, serving a term for murder in the Penitentiary, while at the University Hospital for medical treatment, escaped when his guard left him temporarily unwatched in order to arrange for return transportation to the Penitentiary. In his petition for post conviction relief, filed in the Criminal Court of Baltimore, Best asserted that he did not commit the crime of escape as defined in Art. 27, § 139, since the University Hospital was not a "place of confinement" and that it was his guard who violated the statute by abandoning custody over him when he was left unguarded.

In rejecting these contentions, and in denying application for leave to appeal, Judge Sybert, writing for this Court, stated:

"The argument that the applicant did not commit the crime of escape since he was left unguarded and the hospital was not a 'place of confinement', is answered in *Johnson v. Warden*, 196 Md. 672, 75 A. 2d 843 (1950). There this Court held that a prisoner was legally confined in the State Reformatory within the meaning of what is now Art. 27, sec. 139, even though he was allowed to work outside, unguarded, on a private farm, and that, when he

escaped from the farm, he was subject to punishment for escape from the Reformatory. The same reasoning applies in the instant case, and thus the applicant was properly convicted of escape under Art. 27, sec. 139. Cf. *Taylor v. State*, 229 Md. 128, 182 A. 2d 52 (1962). The claim that the guard had abandoned 'jurisdiction' or custody (even if it were assumed that he could lawfully do so), is negated by the fact that the only reason the applicant was left alone was to permit the guard to arrange for transportation back to the penitentiary." 235 Md. at 634-35, 201 A. 2d at 491.

The issue was more directly raised in *Ford v. State*, 237 Md. 266, 205 A. 2d 809 (1965), where the appellant, serving a sentence in the Maryland Correctional Institution for a motor vehicle offense, was brought to the Criminal Court of Baltimore to stand trial upon an indictment charging him with burglary and larceny of an automobile. Escorted to the court by an Institution correctional officer, the appellant's handcuffs were removed; having been granted permission "to get a drink of water," he broke away from his guard, and ran out of the courtroom. He was recaptured on the street almost immediately. Subsequently convicted and sentenced in the Criminal Court of Baltimore for escape from the Maryland Correctional Institution the appellant contended, *inter alia,* that he could not be guilty of escape because he was physically outside the prison area and that he had been subjected to "double jeopardy" by reason of administrative intramural punishment. On the authority of the holdings in *Best v. Warden, supra, Taylor v. State, supra,* and *Johnson v. Warden, supra,* this Court held that even though he was physically outside the prison area of the Maryland Correctional Institution, he was still in the legal custody of the Institution and when he broke away from the guard he escaped in violation of § 139.

In *Shifflett v. State*, 4 Md. App. 227, 242 A. 2d 182 (1968), the appellant, committed to the Baltimore County Jail under a lawful sentence, was assigned to work as a "trusty" in the

office of the chief clerk of the Baltimore County magistrate's court from which he "took leave." Convicted of violating § 139 he contended that he had not escaped from the Baltimore County Jail, but rather from the office at the magistrate's court, which was not a "place of confinement" within the meaning of the statute.

The Court of Special Appeals in an opinion by Chief Judge Murphy (then Chief Judge of that court) stated:

> "We find no merit in this argument. The jail is expressly included as a place of confinement under the statute. As appellant was lawfully under sentence and committed to the jail, the fact that he was physically beyond its confines when he escaped does not immunize him from prosecution under the statute. See *Fabian v. State*, 3 Md. App. 270, 280, at footnote 5, collecting authorities to the effect that no distinction exists between an escape from within prison walls and one effected when the prisoner, in legal custody, was physically outside the prison area." 4 Md. App. at 229, 242 A. 2d at 184.

In *Beasley v. State*, 17 Md. App. 7, 299 A. 2d 482, *cert. denied*, 268 Md. 745 (1973), the appellant was convicted in the Circuit Court for Anne Arundel County, under a criminal information, with a violation of Art. 27, § 139. Although the appellant had pleaded guilty, on appeal he contended that he had escaped while on the "work release" program and should have been convicted instead of a misdemeanor under Art. 27 § 700A (c).

The Court of Special Appeals, in holding that the appellant had been properly charged, stated:

> "The language in the information [footnote omitted] charges that the appellant 'while undergoing lawful custody in pursuance of a sentence * * * did * * * from * * * said custody, escape * * * .' We held in *Shifflett v. State*, 4 Md. App. 227 that the escape of a prisoner while in constructive custody under a work release program

constituted an escape *from a place of confinement* in violation of § 139. In the light of *Shifflett* we now conclude that the allegations in the information are legally equivalent to stating that the appellant escaped from a place of confinement as proscribed by § 139. The language used to charge a violation of a statutory offense need not be in the exact language of the statute." (Emphasis supplied.) 17 Md. App. at 11, 299 A. 2d at 484.

After tracing the legislative history of both § 139 and § 700A (c), that court, in concluding that the appellant could have been charged and convicted under either statute, stated:

"There is no substantial difference in the conduct prohibited by the two statutes. Section 139 proscribes the escape of prisoners *generally from a place of confinement* while § 700A (c) prohibits the escape of prisoners under the jurisdiction of the Department of Correction while on a work release program. We hold therefore that at the time of the enactment of § 700A (c) in 1963 and prior to the 1966 amendment of § 139 there was no inconsistency or repugnancy between the two statutes and that both were then in full force and effect." 17 Md. App. at 13, 299 A. 2d at 485.

*See also Robinson v. State,* 18 Md. App. 438, 306 A. 2d 624 (1973), in which the Court of Special Appeals in reversing the appellant's conviction and ordering a new trial, pointed out that the gravamen of the offense was a *"wilful* failure to return to the place of confinement at the time specified in such [work release] plan." That court, however, in discussing § 139 — after pointing out the holdings of this Court in *Ford v. State, supra, Best v. Warden, supra, Taylor v. State, supra* and *Johnson v. Warden, supra* — stated:

"§ 139 is a broadly based statute embracing within its purview *all escapes* from lawful confinement, whether the escape was initiated from within or

without the walls or other boundaries of a penal facility; whether the confinement was actual or constructive; whether it was effected with or without force, and without regard to the circumstances of confinement if the detention was under color of law." 18 Md. App. at 441-42, 306 A. 2d at 626.

Although, in none of the cases which have come before this Court, or before the Court of Special Appeals, has the question of venue been raised *in eo nomine,* the issue was certainly obliquely before this Court in both *Taylor v. State, supra,* where the defendant was charged in the Criminal Court of Baltimore with escaping from the House of Correction (in Anne Arundel County), and *Ford v. State, supra,* where he was tried in the Criminal Court of Baltimore for escape "from the Maryland Correctional Institution" (in Washington County). In each the indictments on their face presented the issue of venue. As a result of these decisions under the provisions of § 139 a certain "gloss" has been placed upon the statute which recognizes that "constructive" custody remains in the place of confinement to which the prisoner had been committed and it is legally indistinguishable from "actual" custody. As a distillation of these decisions § 139 has come to be interpreted to mean that the crime of escape takes place either (1) in the county where the physical departure actually occurs, or (2) in the county where the institution is located, which is the prisoner's "place of confinement" and from which his "constructive" departure occurs. Since the Legislature has elected, following these decisions, not to amend the statute, but rather has acquiesced in its judicial construction there is a strong presumption that the intention of the Legislature and the words used by it have been correctly interpreted and such interpretation should not be disregarded. *See Hearst Corp. v. State Dept. of Assessments,* 269 Md. 625, 308 A. 2d 679 (1973); *Perdue Foods v. State Dept. of Assessments,* 264 Md. 672, 288 A. 2d 170 (1972); *Shriner v. Mullhausen,* 210 Md. 104, 122 A. 2d 570

(1956). *See also Creaser v. Owens*, 267 Md. 238, 297 A. 2d 235 (1972).

Thus, by judicial interpretation, acquiesced in by the Legislature, § 139 has been given a construction that would make it similar to the statute applied in *People v. Vanderburg*, 67 Cal. App. 217, 227 P. 621 (1924), and the Kentucky statute applied in *Cutter v. Buchanan*, 286 S.W.2d 902, 903 (Ky. 1956), and *Clark v. Commonwealth*, 293 S.W.2d 465, 467 (Ky. 1956), *cert. denied*, 353 U. S. 923 (1957), in both of which cases the Court of Appeals of Kentucky held that their statute prescribed two modes of committing a single offense, *i.e.* escaping from the institution itself — from within the walls of the prison — or escaping "from the bounds where he had been assigned."

In *State v. Hutcheson*, 251 Ore. 589, 447 P. 2d 92 (1968), the Supreme Court of Oregon held that a "work release" enrollee who escaped from his job in one county was nonetheless in the "constructive" custody of the Corrections Division in another county and his trial was properly conducted in the county where the Corrections Division was located. Although that court, in *Hutcheson*, did not rule whether or not he could also be prosecuted in the county where he escaped — because the question was not then before the court — the Court of Appeals of Oregon in *Kneefe v. Sullivan*, 2 Ore. App. 152, 465 P. 2d 741 (1970), held that notwithstanding the provisions of Art. I, § 11, of the Oregon Constitution, which creates the right to a public trial in the county in which the offense shall have been committed, there was proper venue over the offense of escape *either* in the county where the petitioner was in "constructive" custody, or in the county where he was physically in custody at the time of his escape. That court stated:

> "The Constitution of the State of Oregon provides for venue to be in the county in which a crime is committed. Escape becomes, under the circumstances of this case, a crime in which the prohibited act or the effects thereof occur in more than one county, i. e., physically in one, construc-

tively in the other. [Footnote omitted] Generally, one will be able to receive a fair trial in either county. Either Marion County, where the petitioner was constructively in custody, or Multnomah County, where he was physically in custody at the time of the escape, would have been the right county for his trial on the charge of escape." 2 Ore. App. at 156, 465 P. 2d at 743.

The doctrine of "constructive custody" in the place of confinement to which the prisoner had been committed, notwithstanding the fact that he absented himself at a place other than at the place of confinement, has been consistently applied by the Supreme Court of Missouri in *State v. Baker*, 355 Mo. 1048, 199 S.W.2d 393 (1947) and in *Ex Parte Rody*, 348 Mo. 1, 152 S.W.2d 657 (1941), by the Supreme Court of Indiana in *State v. Rardon*, 221 Ind. 154, 46 N.E.2d 605 (1943), by the Supreme Court of Connecticut in *State v. Mead*, 130 Conn. 106, 32 A. 2d 273 (1943), by the Supreme Court of California in *Bradford v. Glenn*, 188 Cal. 350, 205 P. 449 (1922) and by the Criminal Court of Appeals of Oklahoma in *Sweden v. State*, 83 Okla. Crim. 1, 172 P. 2d 432 (1946).

Premised as it is upon the fact that the prisoner has been committed to a specific institution, and that the offense occurs when he elopes therefrom — regardless of whether he is confined within its walls or temporarily away therefrom — the doctrine of "constructive custody" appears to be in accord with the weight of authority.

In view of the holdings by this Court in *Kisner v. State*, 209 Md. 524, 122 A. 2d 102 (1956), where Judge Hammond (later Chief Judge), pointed out that neither the Constitution of 1776 nor succeeding Maryland Constitutions require that the trial of an accused take place in the county where the crime was committed and that the "concept that the common law necessity for trial in the county of the commission of the crime is not a fundamental right or requirement," the petitioner's reliance on *State v. Dignan*, 114 W. Va. 275, 171 S. E. 527 (1933) and *Rice v. State*, 192 So. 2d 698 (Miss. 1966),

is misplaced. In *Dignan* the Supreme Court of Appeals for West Virginia held that the provision of Art. 3, § 14, of that state's constitution prohibited venue for the trial of escape in one county where the prisoner had actually escaped from a road gang in another county, and concluded that "there is no room under the West Virginia Constitution to interpret any statute as creating a constructive venue of crime." In *Rice* the Supreme Court of Mississippi, in rejecting the doctrine of "constructive custody," applied a similar provision in its state constitution. *See State v. Hutcheson, supra,* where, notwithstanding a substantially similar provision in the Oregon Constitution, the Supreme Court of that state specifically rejected the holdings in *Dignan* and in *Rice.*

As we see it, the gravamen of the offense prohibited by § 139 is the physical departure by an inmate from the "place of confinement" and although the prohibited act may physically take place in a separate geographical area, the effects of that act occur at the place of confinement. The concurrence of the act with its resultant effect thus permits venue in the subdivision where the "place of confinement" is located. *See Urciolo v. State,* 272 Md. 607, 631, 325 A. 2d 878, 892 (1974).

To limit venue in such cases to the place where the inmate physically happened to be when he eloped would impose impractical impediments in the administration of criminal justice. Customarily when a prisoner escapes he is, upon apprehension, returned to his "place of confinement," where his records are on file and where the custodial personnel who may have had custody over him at the time of his elopement are stationed. Charging the escapee in the county where the "place of confinement" is located, accommodates the presentation of the evidence without requiring the attendance of witnesses and the production of documents at a place far removed from the situs of the institution to which the inmate had been committed.

Additionally, if venue were held to be limited to the place where an inmate physically made good his escape, there would be a complete frustration on the part of prison

officials, in those cases where a prisoner may have been dispatched on a work detail or some assignment in an area distant from his place of confinement which would require inter-county transportation, and his disappearance became noted only at the point of destination, in undertaking to fix geographically that county (somewhere between the point of embarkation and scheduled disembarkation) where the prisoner physically departed the transporting vehicle.

When Brenda Stewart was lawfully committed to the Maryland Correctional Institution for Women, that institution, located at Jessup in Anne Arundel County, became her "place of confinement." When escorted to the University Hospital for outpatient medical care, she was still "confined" at the institution and was "within the bounds where she had been assigned"; she was only temporarily absent from that institution's actual custody. Although she was physically in Baltimore City when, by a subterfuge, she escaped by evading the custody of the correctional officer who accompanied her, she constructively remained confined in Anne Arundel County; her prohibited act in Baltimore City took effect in Anne Arundel County, and she thus escaped from the confinement to which she had been legally committed at the Maryland Correctional Institution for Women. We conclude that venue over the offense with which she was charged was properly laid in Anne Arundel County and that her motion was thus properly denied.

Although the Court of Special Appeals in affirming the petitioner's conviction, opined that venue would also lie in Baltimore City — where the actual departure occurred — we need not here, upon the facts of this case, in the light of our holding that there was venue in the county where her place of confinement was located and where she was constructively in custody, pass upon the correctness of that conclusion.

*Judgment of the Court of Special Appeals affirmed; costs to be paid by appellant.*

*Eldridge, J., dissenting:*

In my view, the proper venue where a defendant is charged with the crime of escape is the jurisdiction where the escape actually took place. Where a timely objection to venue is made, the statute does not permit trial in a different county because of the location of the institution in which the defendant was previously confined. Therefore, I would reverse petitioner's conviction of escape.

Art. 27, § 139, provides in pertinent part (emphasis supplied):

> "If any offender or person legally detained and confined in the penitentiary or jail, or house of correction, or reformatory, or station house, or any other place of confinement, in this State, shall escape he shall be guilty of a felony and on conviction thereof by the Criminal Court of Baltimore City or by the circuit court *of the county in which the escape takes place*, be sentenced to confinement . . . for such additional period, not exceeding ten years, as the court may adjudge."

The majority opinion purports to recognize the principle, which this Court has reiterated on numerous occasions, that "a statute should be construed according to the ordinary and natural import of the language used, unless a different meaning is clearly indicated by its context, without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation." *Balto. County v. White*, 235 Md. 212, 218, 201 A. 2d 358 (1964); *Dundalk Liquor Co. v. Tawes*, 197 Md. 446, 454-455, 79 A. 2d 525 (1951); *Barrett v. Clark*, 189 Md. 116, 123, 54 A. 2d 128, 173 A.L.R. 988 (1947); *Schmeizl v. Schmeizl*, 186 Md. 371, 375, 46 A. 2d 619 (1946). *See also Grosvenor v. Supervisor of Assess.*, 271 Md. 232, 237-238, 315 A. 2d 758 (1974); *Radio Communications, Inc. v. Public Service Commission*, 271 Md. 82, 93, 314 A. 2d 118 (1974); *Chillum-Adelphi Volunteer Fire Dept., Inc. v. Prince George's County*, 269 Md. 486, 491, 307 A. 2d 481 (1973); *Scoville Service, Inc. v. Comptroller of*

*the Treasury,* 269 Md. 390, 395, 306 A. 2d 534 (1973); *Giant of Maryland, Inc. v. State's Attorney for Prince George's County,* 267 Md. 501, 511-512, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915, 93 S. Ct. 2733, 37 L.Ed.2d 141 (1973); *Germenko v. Pub. Service Comm.,* 226 Md. 295, 301-302, 173 A. 2d 362 (1961).

Applying this principle of statutory construction to the subject case, the ordinary and natural import of the language used dictates that a prosecution for escape be only in the jurisdiction where the actual escape takes place. An escape occurs when there is a "departure or deliverance out of custody," Black's Law Dictionary (Rev. 4th ed. 1968), 639, and in the present case such event concededly occurred in Baltimore City. Art. 27, § 139, specifies that the defendant shall be guilty of escape if convicted by *"the* circuit court of *the* county in which the escape takes place . . . ." The statutory language is clear and unambiguous in specifying one and only one court for the trial of escape cases, namely that of the jurisdiction where the "escape" occurs. To construe the statute, as did the Court of Special Appeals, to permit trial in either the county where the escape takes place or the county where the correctional institution in which the defendant had previously been confined is located, would be, in the language of the above-cited cases, "resorting to subtle or forced interpretations for the purpose of extending . . . [the statute's] operation."

The holding of the majority and of the Court of Special Appeals, that venue for escape may lie "in the county of the penal institution from which the constructive departure occurs" (21 Md. App. at 353), could present serious problems with regard to ascertaining the county of "constructive departure." Since 1967 in Maryland, convicted persons have not been sentenced to correctional institutions as was formerly the practice. Instead, all sentences are to the jurisdiction of the Division of Correction of the Department of Public Safety and Correctional Services, and all such sentenced persons "shall be committed to the custody of the Commissioner of Correction." Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.), Art. 27, § 690 (b). *See also* Code (1957,

1971 Repl. Vol.), Art. 41, § 204D (a). The Commissioner of Correction may confine them in "institutions," county or Baltimore City detention facilities, correctional camps, community correction centers, other "facilities" under his jurisdiction, State Police barracks, or, in the case of illness, "to a place where adequate treatment for the illness of the prisoner may be maintained." Art. 27, §§ 689, 690, 698. Moreover, under Art. 27, § 700E, the Commissioner of Correction need not keep inmates, sentenced to his jurisdiction for certain specified crimes, in "actual confinement," but he may grant them the privilege of living in a "noninstitutional environment" including living at home. In light of the fact that sentences are not to designated institutions, and considering the flexibility which the Commissioner of Correction has in regard to places of confinement, or even places of "non-confinement," the concept of "constructive custody" in the "institution" to which a person had been confined is just not a practical one for determining venue in escape cases. Under the existing statutory scheme, for escape purposes there is little or no rational basis for distinguishing between "institutions" and other places where a person may be held in custody by the Commissioner of Correction. A convicted person, sentenced to the custody of the Commissioner of Correction, may never be "confined" in what has traditionally been regarded as an institution.

The majority opinion discusses in detail the cases in this Court dealing with what constitutes the crime of escape under Art. 27, § 139, states that the "question of venue . . . was certainly obliquely before this Court" in two of the cases, and further states that, as a result of those decisions, "a certain 'gloss' has been placed upon" § 139. The cases are: *Slagle v. State*, 243 Md. 435, 221 A. 2d 641 (1966); *Ford v. State*, 237 Md. 266, 205 A. 2d 809 (1965); *Best v. Warden*, 235 Md. 633, 201 A. 2d 490 (1964); *Taylor v. State*, 229 Md. 128, 182 A. 2d 52 (1962); and *Johnson v. Warden*, 196 Md. 672, 75 A. 2d 843 (1950). However, in none of these cases was the issue of the proper venue presented or considered. Since it is well settled that any question concerning venue is waived if

not timely raised, I do not understand how the issue of venue was before the Court in any of the prior cases, even "obliquely." This Court, in the above-cited cases, was not construing the phrase in Art. 27, § 139, delineating the proper venue for trial of the crime of escape. Instead, the Court was construing the language in the statute which comes before the venue provision, setting forth the substantive crime of "escape."

Moreover, assuming arguendo that the prior cases in this Court concerning Art. 27, § 139, were instructive on the matter of venue, they would support the position that venue for the crime of escape under § 139 lies in the county where the escape actually takes place and not in the county where the penal institution is located. In *Best v. Warden, supra,* 235 Md. at 634, and presumably in *Johnson v. Warden, supra,*[1] the penal institution and the place from which the actual escape took place were in the same county; so no question of venue pertinent here could have been raised. In all of the remaining cases, where it appears that the penal institution was in one jurisdiction and the escape in another, the trial for the crime of escape took place in the jurisdiction where the escape actually occurred. Thus, in *Slagle v. State, supra,* 243 Md. 435, the inmate was confined in the Baltimore City jail awaiting trial; he was sent to the Clifton T. Perkins Hospital in Howard County for an examination; and, like the petitioner in the instant case, he escaped from the hospital. His trial for the crime of escape was in Howard County, where the hospital was located, instead of in Baltimore City where the penal institution where he had been confined was located. In *Ford v. State, supra,* 237 Md. 266, the appellant was confined in the Maryland Correctional Institution in Washington County; he was brought to the Baltimore City courthouse by a guard from the Maryland Correctional Institution; at the courthouse he

---

1. In *Johnson,* the inmate was confined in an institution located in Washington County; the institution officials assigned him to work on a farm; and he escaped from the farm. While the reported opinion does not specify the county in which the farm was located, it is reasonable to assume that institution officials in Washington County would choose nearby farms for the assignment of their inmates.

asked the guard if he could go get a drink of water; and after he was granted permission and his handcuffs were removed, he escaped. The trial on the escape charge was in Baltimore City, where the escape occurred, and not in Washington County where the penal institution was located. In *Taylor v. State, supra,* 229 Md. 128, the inmate was confined in the House of Correction in Anne Arundel County, and was later transferred to a "Correctional Camp" at Sandy Point, also in Anne Arundel County. He was then placed on a work detail at University Hospital in Baltimore City, and, like petitioner Brenda Stewart, escaped from University Hospital. The prosecution of Taylor for escape was in Baltimore City, where University Hospital is situated, and not in Anne Arundel County where both the House of Correction and the Sandy Point Correctional Camp were situated. Consequently, if the issue of venue were "obliquely before this Court" in any of our prior cases, one would have to draw the conclusion that, under our cases, the appropriate jurisdiction for trial of the crime of escape is the jurisdiction where the escape actually takes place.

Cases in other jurisdictions under constitutional or statutory venue provisions like Art. 27, § 139, have reached the same result as I would here. In *State v. Dignan,* 114 W. Va. 275, 171 S. E. 527 (1933), a convict was temporarily assigned to a road gang in Braxton County, West Virginia, from which he escaped. However, he was tried for escape in a different county, where the state penitentiary was located. In light of the provision of the West Virginia Constitution that trials for such crimes shall be held in the "county where the alleged offense was committed," the Supreme Court of West Virginia reversed the conviction, rejecting the argument "that a convict can be constructively in the penitentiary for the purposes of venue of a criminal offense without being physically present in . . . [such] county." 171 S. E. at 528. The Supreme Court of Mississippi under similar facts and a similar constitutional provision reached the same result in *Rice v. State,* 192 So. 2d 698 (Miss. 1966).[2]

---

**2.** The majority opinion states that the petitioner's reliance on *Dignan* and *Rice* is misplaced because Maryland, in light of the holding in *Kisner v*

On the other hand, the cases which have reached the same result as does the majority in the instant case, have all involved statutory provisions which specified that venue in escape cases would lie in more than one county, or have arisen where there were no constitutional or statutory provisions bearing on the question. Thus in *People v. Vanderburg,* 67 Cal. App. 217, 227 P. 621 (1924), the statute provided "that a charge of escaping from a prison may be tried in any county of the state." In *People v. Richards,* 247 Mich. 608, 226 N. W. 651, 652 (1929) and *People v. Thomas,* 1 Mich. App. 118, 134 N.W.2d 352, 357-358 (1965), the statute provided that one charged with an escape "shall be charged with said offense and tried in the courts of the county wherein the administrative offices of the prison may be," regardless of where the escape took place. *See also Cutter v. Buchanan,* 286 S.W.2d 902, 903 (Ky. 1956), and *Clark v. Commonwealth,* 293 S.W.2d 465 (Ky. 1956), *cert. denied,* 353 U. S. 923, 77 S. Ct. 682, 1 L.Ed.2d 720 (1957) (involving a Kentucky statute expressly permitting trial in both places); *State v. Hutcheson,* 251 Or. 589, 447 P. 2d 92 (1968) (involving an Oregon statutory scheme which decreed that custody should remain with a specified institution); *Sweden v. State,* 83 Okl. Cr. 1, 172 P. 2d 432 (1946) (no pertinent constitutional or statutory provisions involved). The cases from other jurisdictions cited by the majority, namely *State v. Mead,* 130 Conn. 106, 32 A. 2d 273 (1943); *State v. Rardon,* 221 Ind. 154, 46 N.E.2d 605 (1943); *State v. Baker,* 355 Mo. 1048, 199 S.W.2d 393 (1947); *Ex Parte Rody,* 348 Mo. 1, 152 S.W.2d 657 (1941), did not involve questions concerning appropriate venue.

The plain language of Art. 27, § 139, requires that venue for the crime of escape be only where the actual escape takes place. Therefore I would reverse the judgment of the Court of Special Appeals.

---

State, 209 Md. 524, 122 A. 2d 102 (1956), does not have a constitutional provision like West Virginia's and Mississippi's. While Maryland may not have a constitutional provision specifying the venue for criminal offenses like this, we do have a statutory provision specifying that the proper jurisdiction for the trial of escape cases is the "county in which the escape takes place," Art. 27, § 139.

Judges Smith and Digges authorize me to state that they concur in the views expressed herein.